GEORGE G. BOWMAN ᴇᴛ ᴀʟ. *v.* WILLIAM
G. WILLIAMS.

[No. 22, January Term, 1933.]

*Decided March 21st, 1933.*

The cause was argued before Bond, C. J., Urner, Adkins, Offutt, Digges, Parke, and Sloan, JJ.

*William L. Marbury* and *William L. Marbury, Jr.,* with whom was *L. Wethered Barroll* on the brief, for the appellants.

*Henry M. Siegel,* with whom was *John A. Sherman* on the brief, for the appellee.

Parke, J., delivered the opinion of the Court.

William G. Williams, the plaintiff, lived with his wife, and two sons of twelve and fourteen years, in Baltimore City, at the southwestern corner of the intersection of Falls Road, whose general direction was north and south, and Thirty-Eighth Street, which ran east and west. His house fronted on Falls Road and extended back on Thirty-Eighth Street the depth of three rooms, the first being the parlor, the second, the dining room, and the third the kitchen. The parlor had two windows on Falls Road, but none on Thirty-Eighth Street, and the dining room had two windows opening on Thirty-Eighth Street and the kitchen one. Under these three communicating rooms was a basement.

The plaintiff had left his work on December 2nd, 1929, because of the rain and sleet, and had returned to his home. About half past one in the afternoon the wife was in the kitchen, the two boys in the basement, and the plaintiff was standing at the dining room window, which was nearer to the front of the house, looking out, when he saw a large truck, loaded with coal, without chains on its wheels, coming from the east down the steep and icy hill on Thirty-Eighth Street.

The truck was driven by the servants of the defendant, and, gathering speed, it got out of control, dashed across Falls Road, struck the north curb of Thirty-Eighth Street, turned sharply to the left, and then ran across the street, over its southern curb and the sidewalk, and crashed into the stone foundation of the side of the house; thrust itself into the basement under where the plaintiff was standing, and remained there embedded in the side of the house.

The plaintiff did not sustain any physical impact; nor did the violent jar to the house cause him to fall, although he experienced the tremor imparted to the house. The fright of the plaintiff and his alarm for the safety of his two young sons occasioned by this accident were, however, such a shock to his nervous system that he fell to the floor of the dining room immediately after the impact of the truck with the fabric of the house, and was carried into the kitchen in a weak and hysterical condition. The doctor was sent for, and the plaintiff remained in bed for two weeks under regular medical treatment. From a state of normal health, the plaintiff immediately became and continued quite weak and nervous, as was manifested to his family physician and an expert consultant in nervous disorders, by tangible evidence not susceptible of simulation, and by the absence of any physical reason for his condition. He was unable to work for six months, and after that period the testimony is that his condition gradually improved and is now about normal.

The action is to recover damages for these injuries, and the plaintiff's testimony tends to support the facts here stated. The defendants are the owners of the truck and their agents were operating it when the wrong was committed. The sole defense made went to the right of action on the plaintiff's testimony; and the witnesses produced by the defendants were only to contradict the plaintiff's testimony relative to the state of his health before the occurrence of the accident. No explanation of why the truck ran into the house was attempted by the defendants. The judgment was for the plaintiff, and the defendants have appealed. The four exceptions to the rulings of the court on the admission of testimony

are not mentioned in the brief of the defendants. The court has considered these exceptions, which relate either to collateral matters or the form of questions put to an expert witness, and found no error presented. *Lee v. Tinges,* 7 Md. 215, 236, 237; *Grill v. O'Dell,* 113 Md. 625, 640, 77 A. 984; *Gordon v. Opalecky,* 152 Md. 536, 548, 137 A. 299. The fifth and last exception is to the action of the trial court on the prayers. The defendants contend that there was error in the refusal to grant the first and fifth prayers of the defendants, and in the submission to the jury of the prayer written by the court.

The defendants' first and fifth prayers present the theory that there can be no recovery for physical injuries resulting from fright caused by a wrongdoer, unless the fright was for the injured party's own safety. The first prayer is founded upon the hypothesis that the evidence is undisputed that the fright did not originate in the fear of the plaintiff for his own safety, and therefore an instructed verdict for the defendants was asked. The fifth prayer, however, proceeds upon the alternative assumption that the testimony is susceptible of either inference, and denies a recovery. in the event that the jury should find that the fright of the plaintiff was not produced for his own safety but for that of his children.

The theory of the defendants confounds the effect of a breach of duty with the breach. The master has the right to drive the truck upon the highway, but, in the exercise of this right, the master owes a duty to the other users of the highway, and the occupants of the contiguous premises, so to operate the truck that an injury to the person or property rights of the other users of the highway and of the occupants of the contiguous premises will not be inflicted by the failure of the master to operate the truck with reasonable care and caution under the circumstances. 1 *Beven on Negligence in Law* (4th Ed.), 62, n. c. As is succinctly expressed in *Bohlen's Studies in the Law of Torts,* 265: "* * * No recovery is allowed for mere fright because fright is not of itself such an injury as must be shown to maintain an action

for negligence and * * * where physical injury is shown to have resulted, the plaintiff has proved an injury sufficient to sustain the action, the only question being whether or not the injury is the legal consequence of the negligence which caused the fright." *Id.,* 266, 270, 280. So the negligent, but not wilful, driving of the truck from the public highway through the wall of the house in which the plaintiff lived was the breach of duty which in the user of the highway the masters owed the plaintiff. *Bohlen's Studies in the Law of Torts,* 259-264, 285. With respect to the present inquiry, the primary effect of this wrongful act upon the personality of the plaintiff was the fright it caused him, since his person was untouched, although the possession under his demise was invaded. In fright a man's whole being reacts. The shock to his nervous system is reflected in instinctive excitement and intensive action of the muscles and organs of the body, and so it is clear that the mental state has a corresponding physical accompaniment, although there has been no impact suffered. "The fear's as bad as falling." Nor does the cause of the fear afford any standard of measurement of its consequences. When fear exists, the nervous and physical reactions, although probably differing in degree, are fundamentally identical, whether the fear is purely subjective, as when it is for the victim's own safety, or is objective, as when the fear is for the victim's wife, child, relative, friend, or even a stranger. If a person is afraid, no matter the subject or object, in actual or imagined peril, the voice may fail, the muscles may become rigid or convulsive, the body shake, and fall; or even paralysis, madness, miscarriage, nervous maladies, ill health, or death may result mediately or immediately. These familiar illustrations demonstrate that, the effect of fright being impredicable, there is neither logic nor reason to hold, with some of the cases, that a distinction is to be taken, so that, if a party suffer an injury, as loss of health, of mind, or of life, through fear of safety for self, a recovery may be had for the negligent act of another; but may not recover under similar circumstances, if the fear be of safety for another.

In the matter before the court, the nervous shock or fright sustained by the plaintiff was based on reasonable grounds for apprehension of an injury to the plaintiff and his children, and was one which naturally produced physical deterioration as distinguished from those shocks which primarily work on the moral nature, to the exclusion of actual physical injury. Furthermore, the cause of the fright was the negligent act or omission of the defendants in permitting the truck to get out of control or be driven so as to run into the house of the plaintiff. This was a breach of duty that the defendants owed to the plaintiff. The physical damages which the plaintiff sustained naturally, directly, and reasonably arose from this negligent act or omission, without the intervention of any other cause, and so the causal connection between the injury and the occurrence is established.

There is, therefore, on principle and weight of argument, no reason to deny to the plaintiff a right to recover in this action, because of the fact that the injury might have arisen from fear for the safety of the plaintiff's children rather than for his own. It is a fundamental principle that, where legal injury has resulted, without any break in the chain of causation, from a wrong, a right of action for damages arises. *Clerk & Lindsell on Torts* (8th Ed.), 123, 124; *Solomon on Torts* (7th Ed.), 436; *Beven on Negligence in Law* (4th Ed.), vol. 1, pp. 60-72; *Hambrook v. Stokes Bros.* (1925), 1 K. B. 156.

In the last-cited case, Atkin, L. J., in reviewing the cases, said: "I can find no principle to support the self-imposed restriction stated in the judgment of Kennedy, J., in *Dulieu v. White & Sons* that the shock must be a shock which arises from a reasonable fear of immediate personal injury to oneself. It appears to me to be inconsistent with the decision in *Pugh v. London, Brighton & South Coast Ry. Co.* and with the decision in *Wilkinson v. Downton,* in neither of which cases was the shock the result of the apprehension of the injury to the plaintiff. It would result in a state of the law in which a mother shocked by fright for herself would recover, while a mother shocked by her child being killed be-

fore her eyes could not, and in which a mother traversing the highway could recover if shocked by fright for herself, while if she could be cross-examined into an admission that the fright was really for her child she could not. In my opinion such distinctions would be discreditable to any system of jurisprudence in which they formed part." *Dulieu v. White & Sons* (1901), 2 K. B. 669; *Pugh v. London etc. Ry. Co.* (1896), 2 Q. B. 248; *Wilkinson v. Downton* (1897), 2 Q. B. 57.

The instant case does not require the doctrine to be extended so far as is indicated by the opinion quoted, and this decision is confined to the facts of the record at bar, which present a somewhat different situation. Here there was imminent danger of physical contact that confronted the plaintiff, who had visible reason to apprehend that the impending peril caused by the negligent act or omission of the defendants' servants with respect to their duty to him would not only happen but would also crush and damage the building and inflict the threatened physical injury upon his children in the basement and himself in the dining room of the house. There was no basis to differentiate the fear caused the plaintiff for himself and for his children, because there is no possibility of division of an emotion which was instantly evoked by the common and simultaneous danger of the three.

The courts have differed widely in their attitude with respect to actions for injuries resulting from fear, fright or other emotional reactions, as is sufficiently indicated by the cases collected and annotated in 11 *A. L. R.* 1119, 1134, 1143; 40 *A. L. R.* 970, 985, 986; 76 *A. L. R.* 681, 684, 686; and in the recent article "Fright Cases", by Prof. Leon Green, found in 27 Illinois Law Review, at p. 761. It is objected that the effect of fright is subjective, imaginative, conjectural, and speculative, and therefore easily simulated and feigned, so that its actual existence is difficult to ascertain, and, if found to exist, is inherently insusceptible of compensation by any precise pecuniary standard. These considerations undeniably tend to multiply fictitious or speculative

claims, and to open to unscrupulous litigants a wide field for exploitation, but these difficulties are common, are surmountable, and so should not prevent the operation of the general and fundamental theory of the common law that there is a remedy for every substantial wrong. In Maryland the decision in *Green v. T. A. Shoemaker & Co.,* 111 Md. 69, 76-83, 73 A. 688, and followed in *Balto. & O. R. Co. v. Harris,* 121 Md. 254, 268-270, 88 A. 282; *Patapsco Loan Co. v. Hobbs,* 129 Md. 9, 16, 98 A. 239, and *Great Atlantic & Pacific Tea Co. v. Roch,* 160 Md. 189, 192, 153 A. 22, have settled the principle that a plaintiff can sustain an action for damages for nervous shock or injury caused, without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury, as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state.

In these opinions, this court has fully stated and justified its position, which is in harmony with the modern trend of decision. *Supra,* and 41 *Law Quarterly Review,* 300-302; *Selected Essays on the Law of Torts,* with foreword by Pound, 307, 308 (n. 28), 323, 324. See *Janvier v. Sweeney* (1919), 2 K. B. 316; *Coyle v. Brown & Watson* (1915), App. Cas. 1, 13; *Bell v. Great Northern Ry. Co.* (1890), L. R. Ir. 26 Q. B. 426, 441; *Yates v. Smith Kirby etc. Colleries* (1910), 2 K. B. 539; *Cohn v. Ansonia Realty Co.* (1914), 162 App. Div. 791, 148 N. Y. S. 39; *Comstock v. Wilson,* 257 N. Y. 231, 177 N. E. 431; *Block v. Pascucci,* 111 Conn. 58, 149 A. 210; *Goddard v. Watters,* 14 Ga. App. 722, 82 S. E. 304; *Spearman v. McCrary,* 4 Ala. App. 473, 58 So. 927.

It follows from a consideration of the Maryland decisions and their application to this record that there was legally sufficient evidence for the case to go to the jury, and the court committed no error in rejecting the defendants' first prayer. The fifth prayer of the defendants proceeded upon the theory that the testimony raised an issue of fact whether or not the father's nervous injury was due to fear for self

or for his two children, and the court's action in rejecting this prayer was sound. In the first place, there was no legally sufficient evidence to support the submission of such an issue; and, secondly, the prayer was objectionable on the ground that, under the circumstances shown by the record, the father could have recovered whether this fright was for the safety of his children or of both himself and the children. *Supra.* There is no reversible error in the instruction written by the court, which properly and clearly charged the jury, without being in conflict with the other granted prayers.

*Judgment affirmed, with costs to the appellee.*