ARNOLD LEONARD VANCE *v.* MURIEL GWENDOLYN VANCE

[No. 14, September Term, 1979.]

*Decided December 12, 1979.*

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, ORTH and COLE, JJ.

*Thomas C. Gentner,* with whom were *Rollins, Smalkin, Weston, Richards & Mackie, Robert W. Fox, Timothy E. Welsh* and *Jerome S. Colt* on the brief, for appellant.

*Bernard F. Goldberg* and *Michael D. Rexroad* for appellee.

MURPHY, C. J., delivered the opinion of the Court.

We granted certiorari in this case to consider two principal issues: (1) whether, under the "physical injury" test set forth in *Bowman v. Williams,* 164 Md. 397, 165 A. 182 (1933), damages were properly recovered by the plaintiff for emotional distress resulting from the defendant's negligent misrepresentation and (2) whether under the principles of *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977), the plaintiff presented legally sufficient evidence to the jury to establish all elements of the independent tort of intentional infliction of emotional distress.

The relevant facts are these: Arnold Vance (Dr. Vance) and Muriel Vance (Muriel) participated in a religious marriage ceremony in Arlington, Virginia on September 29, 1956. They lived together as husband and wife for eighteen years and had two children. On February 1, 1974, Dr. Vance left Muriel for another woman, prompting Muriel to seek and obtain a decree in the Circuit Court for Howard County awarding her alimony and child support. Dr. Vance filed a timely motion to strike the decree and annul the marriage on the ground that the marriage was void because he was not divorced from his first wife at the time he purported to marry Muriel.

As a result of this disclosure, Muriel sued Dr. Vance for compensatory damages for emotional distress which she claimed to have suffered as a consequence of Dr. Vance's

negligent misrepresentation concerning his marital status at the time of their ostensible marriage in 1956. Under another count of the declaration, Muriel sought damages from Dr. Vance for the intentional infliction of emotional distress which she claimed resulted from his concealment and belated revelation of their true marital status.

At the trial, evidence was adduced showing that Dr. Vance separated from his first wife in July of 1954 and subsequently initiated suit for an absolute divorce. Erroneously believing that he had obtained his final divorce decree on September 12, 1956, Dr. Vance told Muriel later that month that he was free to marry her. Approximately one month after his September 29, 1956 marriage to Muriel, Dr. Vance discovered that his divorce decree had not become final until October 16, 1956. There was evidence that Dr. Vance never told Muriel that their marriage was a nullity, and that Muriel did not discover that fact until Dr. Vance sought to annul the marriage twenty years later.

Muriel's mother testified that her daughter was in a state of emotional collapse after Dr. Vance filed the motion to annul the marriage. Testifying on her own behalf, Muriel said that upon learning that her marriage was void, she believed that her two children had been illegitimatized [1] and that she had been deceived throughout twenty years of marriage. She described her emotional reaction in these words:

> "I just — I couldn't function, I couldn't sleep, I was totally embarrassed by the fact that he had filed this and it became public knowledge, once it's filed. I consider it defamation of my character. I was too embarrassed to go out and socialize with people that tried to be kind to me. And I just couldn't function. I really thought I was going to have a nervous breakdown. And I even now have symptoms of an ulcer."

---

1. That Muriel's children were not rendered illegitimate because of the invalidity of her marriage is clear. *See* Maryland Code (1974), § 1-206(a) of the Estates and Trusts Article.

Muriel's son by a former marriage, Walter Hess, testified that he frequently spoke with his mother in the days following the discovery that her marriage to Dr. Vance was void. He said that he was frightened by his mother's emotional depression, and that her appearance had changed from that of a woman of beauty to a person who looked "a wreck," with unkempt hair, sunken cheeks, and dark eyes. Hess testified that he had great difficulty in communicating with his mother during this period because she appeared detached, unaware of her own presence, and spent long periods of time crying and sobbing. Hess expressed fear that his mother would end up in an asylum.

No medical evidence was adduced to substantiate Muriel's claim of emotional distress, nor was any evidence produced that she took any medication for her condition.

At the close of the evidence, the trial judge (Macgill, J.) directed a verdict for Dr. Vance on the count of the declaration charging intentional infliction of emotional distress. The jury returned a verdict in Muriel's favor for $50,000 on the negligent misrepresentation count, but the trial court thereafter entered a judgment N.O.V. for Dr. Vance on this count. Muriel appealed both rulings and as to each the Court of Special Appeals reversed. *Vance v. Vance,* 41 Md. App. 130, 396 A.2d 296 (1979).

Writing for the Court of Special Appeals, Chief Judge Gilbert concluded that there was evidence before the jury that Muriel "suffered from emotional distress as a result of learning that her 'marriage' of almost 20 years was no marriage at all." He said that under Maryland law, as set forth in *Bowman v. Williams,* 164 Md. 397, 165 A. 182 (1933), a right of recovery exists for emotional distress "if it results in physical injury"; and that the evidence, considered in a light most favorable to Muriel, was sufficient to support a jury finding that she was "physically injured." The Court of Special Appeals, quoting from *Bowman* (164 Md. at 404), observed that the mental distress must result in " 'some clearly apparent and substantial physical injury, as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental

state.' " The court said: "We think the evidence ... supports a finding by the jury of physical injury from [Muriel's] 'external condition.' [Muriel's] nervousness, spontaneous crying, hollowed appearance, and inability to relate to the present, all constituted evidence of an external condition." *Vance v. Vance, supra,* 41 Md. App. at 137. The court characterized as "outmoded" the belief that there can be no injury to the mind without overt manifestations of bodily harm. It said that "the psyche is as susceptible of injury as the body, and that the absence of apparent physical damage does not serve to lessen the extent of the mental injury." *Id.* at 138.

In concluding that the trial court also erred in directing a verdict for Dr. Vance on the count of the declaration charging intentional infliction of emotional distress, the Court of Special Appeals held that there was legally sufficient evidence before the jury, if believed, to establish all elements of the tort under *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977).

## (1)

Dr. Vance contends that the Court of Special Appeals was wrong in holding that Muriel's emotional distress, resulting from the alleged negligent misrepresentation of his marital status, constituted a "physical injury" within the contemplation of the *Bowman* rule. He argues that claims based solely on emotional distress are not compensable and that "external" evidence of emotional distress cannot be equated with the physical injury requirement of the *Bowman* case. Rather, he argues, there must be a link between the external condition and a physical injury which, to satisfy the dictates of *Bowman,* must be "clearly apparent and substantial." The physical injury must be shown, he contends, by objective indicia of emotional distress evidenced by physical deterioration in the nature of bodily injury. Dr. Vance suggests that Muriel's nervousness, spontaneous crying, hollowed appearance and inability to relate to the present are but physical manifestations of an allegedly distressed mental

state and that, unaccompanied by any bodily injury, are insufficient to show physical injury under the *Bowman* test.

As the trial judge so carefully instructed the jury, a cause of action for negligent misrepresentation exists where one relies on the statements of another who negligently volunteers an erroneous opinion, intending that it be acted upon; the defendant must either know or should know that loss or injury likely will result if the erroneous representation is acted upon. *Piper v. Jenkins,* 207 Md. 308, 313, 113 A.2d 919 (1955); *Holt v. Kolker,* 189 Md. 636, 639, 57 A.2d 287 (1948); *Virginia Dare Stores v. Schuman,* 175 Md. 287, 1 A.2d 897 (1938). That Muriel suffered emotional distress as the ultimate, foreseeable result of Dr. Vance's negligent misrepresentation of his marital status in 1956 was established to the jury's satisfaction. Whether Muriel can recover damages for her mental distress depends upon a proper interpretation of the *Bowman* "physical injury" standard, thus necessitating a brief examination of the historical and evoluntionary context within which the rule developed.

Under the traditional rule, formulated in the nineteenth century, courts did not recognize a duty to refrain from the negligent infliction of emotional distress and therefore recovery of damages solely for mental distress was not permitted. *See Green v. Shoemaker,* 111 Md. 69, 73 A. 688 (1909); *Spade v. Lynn & Boston R.R.,* 168 Mass. 285, 47 N.E. 88 (1897); *Lynch v. Knight,* 11 Eng. Rep. 854, 9 H. L. Cas. 577 (1861); Annot., 64 A.L.R.2d 100-149 (1959). Instead, damages for mental distress had a parasitic status; recovery was dependent upon an immediate physical injury accompanying an independently actionable tort. *See, e.g., Balto. Traction Co. v. Wallace,* 77 Md. 435, 26 A. 518 (1893); *McMahon v. N.C.R.R. Co.,* 39 Md. 438 (1874); W. Prosser, *Law of Torts,* § 54, at 330 (4th ed. 1971). The early cases generally denied recovery for mental distress when the alleged physical injury resulted solely from the internal operation of mental or emotional stresses, although an exception to this rule was sometimes made where there was physical impact upon the plaintiff coincident in time and place with the occasion producing the

mental distress. *See, e.g., Mitchell v. Rochester R. Co.,* 151 N.Y. 107, 45 N.E. 354 (1896); *Homans v. Boston Elevated R. Y. Co.,* 180 Mass. 456, 62 N.E. 737 (1902); *Ewing v. Pittsburg C. C. & St. L. R. Co.,* 147 Pa. 40, 23 A. 340 (1892); Annot., 64 A.L.R.2d at 134-143 (1959). The "physical impact" rule was on occasion stretched to extreme limits to permit recovery for mental distress. *See e.g., Morton v. Stack,* 122 Ohio St. 115, 170 N.E. 869 (1930) (smoke inhaled constituted sufficient impact); *Porter v. Delaware L. & W. R. Co.,* 73 N.J.L. 405, 63 A. 860 (Sup. Ct. 1906) (impact requirement satisfied by dust in the eye). In application, the rule led to arbitrary results and was widely rejected. *See, e.g., Towns v. Anderson,* 579 P.2d 1163 (Colo. 1978); *Dziokonski v. Babineau,* Mass., 380 N.E.2d 1295 (1978), overruling *Spade v. Lynn & Boston R. R., supra.* Maryland rejected the physical impact rule in *Green v. Shoemaker, supra,* adopting instead a rule — later characterized as the "modern rule" — which permitted recovery for negligent infliction of mental distress if a "physical injury" results from the commission of a tort, regardless of impact.

In *Green,* the plaintiff sought damages for mental distress caused by the defendant's negligently conducted blasting operation. The evidence showed that for nearly eight months the plaintiff was subjected to the effects of blasting, which shook her house and caused large rocks to strike the walls and roof of her dwelling. As a result, the plaintiff was constantly in fear of her life, her nerves were "completely broken down," rendering her a "nervous wreck," and she was wholly unable to work. The plaintiff's family physician attributed her "nervous prostration" to the shock of the blasting operations.

In deciding whether a cause of action could be brought for fright and nervousness caused by the defendant's negligence, the Court in *Green* took cognizance of the rule in other jurisdictions that mental distress by itself cannot form the basis of an independent cause of action, and that absent physical impact, recovery cannot be obtained for mental distress. Reasons for the traditional approach were noted by the Court to include concerns that mental distress may be

easily simulated and that no practical standard exists for measuring such suffering. The Court evaluated these concerns and decided that no sound reason existed to deny a right of action for mental distress when such distress results in a "material physical injury." Consequential physical harm coupled with the initial mental distress was believed by the Court to provide a sufficient guarantee of genuineness that would otherwise be absent in a claim for mental distress alone. Accordingly, the Court approved the admission of evidence bearing on the plaintiff's nervous condition, despite the fact that there was no physical impact or corporal injury. In so concluding, the Court quoted, with apparent approval, from *Sloane v. Southern Cal. R. R.,* 111 Ca. 668, 44 P. 320 (1896), a similar case in which there was no physical impact, as follows:

> " 'The real question . . . is, whether the subsequent nervous disturbance of the plaintiff was a suffering of the body or of the mind. * * * The nerves and nerve centres of the body are a part of the physical system, and are not only susceptible of lesion from external causes, but are also liable to be weakened and destroyed from causes primarily acting upon the mind. If these nerves, or the entire nervous system are thus affected, there is a physical injury thereby produced; and if the primal cause of this injury is tortious, it is immaterial whether it is direct, as by a blow, or indirect, through some action upon the mind.' "
> 111 Md. at 79.

In *Tea Company v. Roch,* 160 Md. 189, 153 A. 22 (1931), the Court again considered whether damages could properly be awarded for emotional distress caused by the defendant's negligence. There, the manager of a store sent to a customer a package containing a dead rat instead of a loaf of bread, as intended. The sight of the dead rat so shocked and frightened the plaintiff that she fainted. She subsequently claimed to have become a "nervous wreck," suffering excruciating mental anguish. The Court stated that

"damages may be recovered for physical injuries caused by fright or shock," *Id.* at 191, and it affirmed a judgment for the plaintiff for the nervous shock suffered upon receipt of the package.

*Bowman v. Williams,* 164 Md. 397, 165 A. 182 (1933), the leading Maryland case on the recovery of damages for negligently inflicted emotional distress, involved a plaintiff who was frightened for his own safety and for that of his two sons when the defendant's negligently operated truck crashed into his house. Prior to the impact, the plaintiff observed the truck, out of control, coming toward his house. He knew that his sons were in the basement. After the truck crashed through the foundation of the house, the shock to the plaintiff's nervous system caused him to fall to the floor in a weak and hysterical condition. He remained in bed for two weeks under medical treatment, weak and nervous. He was unable to work for six months. In affirming a jury award of damages for mental distress, the Court noted the presence of medical and other evidence showing that the plaintiff had suffered a nervous disorder as a result of the accident which was not susceptible of simulation or attributable to any other physical reason. The Court observed that the shock to the plaintiff's nervous system "reflected in instinctive excitement and intensive action of the muscles and organs of the body, and so it is clear that the mental state has a corresponding physical accompaniment, although there has been no impact suffered." *Id.* at 401. The Court continued: "[T]he nervous shock or fright sustained by the plaintiff was based on reasonable grounds for apprehension of an injury to the plaintiff and his children, and was one which naturally produced physical deterioration as distinguished from those shocks which primarily work on the moral nature, to the exclusion of actual physical injury." *Id.* at 402. The Court reaffirmed the view earlier expressed in *Green v. Shoemaker, supra,* that actions for injuries resulting from fear, fright or other emotional reactions were not to be proscribed simply because of the possibility of feigned or speculative claims. These difficulties, it said, "are common, are surmountable, and so should not prevent the operation of the general and fundamental theory of the common law that there is a remedy

for every substantial wrong." 164 Md. at 404. It was against this background that the Court concluded in *Bowman* that "a plaintiff can sustain an action for damages for nervous shock or injury caused, without physical impact, by fright arising directly from defendant's negligent act or omission, and resulting in some clearly apparent and substantial physical injury, as manifested by an external condition or by symptoms clearly indicative of a resultant pathological, physiological, or mental state." *Id.* at 404.

The "physical injury" test set forth in *Bowman* was reaffirmed and applied, without elaboration, in *Mahnke v. Moore,* 197 Md. 61, 77 A.2d 923 (1951) and *H & R Block v. Testerman,* 275 Md. 36, 338 A.2d 48 (1975).[2] *See also* Restatement (Second) of Torts § 436A (1965).

We think it clear that *Bowman* provides that the requisite "physical injury" resulting from emotional distress may be proved in one of four ways. It appears that these alternatives were formulated with the overall purpose in mind of requiring objective evidence to guard against feigned claims. The first three categories pertain to manifestations of a physical injury through evidence of an external condition or by symptoms of a pathological or physiological state. Proof of a "physical injury" is also permitted by evidence indicative of a "mental state," a conclusion consistent with the holdings in the *Green, Bowman* and *Roch* cases. In the context of the *Bowman* rule, therefore, the term "physical" is not used in its ordinary dictionary sense.[3] Instead, it is used to represent that the injury for which recovery is sought is capable of objective determination. This interpretation of "physical" has been

---

**2.** *Mahnke* involved acute mental distress suffered by a 5-year-old child forced to witness the murder of her mother and the suicide of her father. A right to recover for emotional distress was recognized. *Testerman* involved a claim of mental distress resulting from the defendant's negligent preparation of the plaintiffs' income tax return. Recovery was not allowed.

**3.** The word is defined in *Webster's Third New International Dictionary* 1706 (1961) to mean ". . . of or belonging to all created existences in nature: relating to or in accordance with the laws of nature . . . : of or relating to natural or material things as opposed to things mental, moral, spiritual, or imaginary: MATERIAL, NATURAL . . . : of or relating to the body . . . often opposed to *mental* . . . . : concerned or preoccupied with the body and its needs . . . ."

employed in various jurisdictions. *See Petition of United States,* 418 F.2d 264, 269 (1st Cir. 1969) (depression, emotional upset and inability to continue working at sea); *D'Ambra v. United States,* 396 F. Supp. 1180, 1183 (D.C.R.I. 1973) (psychoneurosis, loss of appetite, insomnia, nightmares of accident); *Espinosa v. Beverly Hospital,* 114 Cal. App. 2d 232, 249 P.2d 843 (1952) (jury instruction upheld which stated that a definite nervous disturbance or disorder is classified as a physical injury); *Daley v. LaCroix,* 384 Mich. 4, 179 N.W.2d 390 (1970) (loss of weight, inability to perform household chores, extreme nervousness and irritability); *Toms v. McConnell,* 45 Mich. App. 647, 207 N.W.2d 140 (1973) (withdrawal from socialization and for nine months unable to function, depression); *Netusil v. Novak,* 120 Neb. 751, 235 N.W. 335 (1931) (nervous prostration).

The evidence at trial was legally sufficient to establish symptoms of a mental state evidencing a physical injury within the meaning of the *Bowman* standard. The disclosure that her twenty-year marriage was void was shown to have had a devastating effect on Muriel. She went into a state of shock, engaged in spontaneous crying and for a period seemed detached and unaware of her own presence. She was unable to function normally, unable to sleep and too embarrassed to socialize. In addition to experiencing symptoms of an ulcer, Muriel suffered an emotional collapse and depression which manifested itself in her external condition, *i.e.,* her significantly deteriorated physical appearance — unkempt hair, sunken cheeks and dark eyes. The evidence showed that Muriel suffered an objectively manifested, definite nervous disorder of a magnitude similar to the mental distress established in *Green, Bowman,* and *Roch.* Therefore, the Court of Special Appeals correctly applied the *Bowman* standard and properly found that the evidence was sufficient to support a jury finding that Muriel was physically injured as a foreseeable result of Dr. Vance's negligent misrepresentation concerning his marital status.[4]

---

4. Dr. Vance suggests that the Court of Special Appeals erroneously held that there can be recovery for mental distress without physical injury. This argument is based on the court's statement that "it is time that courts unbind

(2)

Dr. Vance contends that because Muriel adduced no medical evidence to support her claim for mental distress, the case was improperly permitted to go to the jury. He relies on cases from other jurisdictions in which medical testimony was produced to establish claims for mental distress. *See Johnson v. State,* 37 N.Y.2d 378, 334 N.E.2d 590 (1975); *Battalla v. State,* 10 N.Y.2d 237, 176 N.E.2d 729 (1961). These decisions, however, do not require medical testimony as a condition to recovery of mental distress. Instead, the medical testimony in these cases was considered in conjunction with other facts and circumstances which tended to prove the genuineness of the claims.

We have recognized that a medical witness is ordinarily the only witness qualified to diagnose a physical ailment. *Galusca v. Dodd,* 189 Md. 666, 668-69, 57 A.2d 313 (1948). Furthermore, jurisdictions permitting recovery for mental distress have placed heavy reliance on the role of medical testimony to provide juries with an intelligent basis for evaluating such claims. *See, e.g., Towns v. Anderson,* 579 P.2d 163 (Colo. 1978); *Johnson v. State, supra; Battalla v. State, supra.* We have nevertheless permitted nonexperts to testify to facts they have observed, even though such facts are ordinarily provable through expert medical testimony. *Galusca v. Dodd, supra,* 189 Md. at 669 (nonexperts testified to plaintiff's bloody face and nervous condition). Thus, although use of expert medical testimony may be advisable in light of cases in which plaintiffs alleging mental distress have successfully established their claims, *see, e.g., Bowman* and *Green,* such

---

themselves from the outmoded belief that there can be no injury to the mind without overt manifestations of bodily harm." Vance v. Vance, 41 Md. App. at 138. We do not believe that the quoted statement constitutes an expression of approval by the court of a cause of action for negligently inflicted emotional distress, even absent accompanying physical injury or physical consequence. The court based its holding squarely on *Bowman,* finding the requisite "physical injury" from the evidence adduced in the case. As to the formulation of a rule recognizing an independent cause of action for the negligent infliction of emotional distress even absent physical injury, *see* Leong v. Takasaki, 55 Haw. 398, 520 P.2d 758 (1974); Wallace v. Coca-Cola Bottling Plants, Inc., 269 A.2d 117 (Me. 1970); Sinn v. Burd, Pa., 404 A.2d 672 (1979).

testimony was not necessary in this case to recover for mental distress.

As a related consideration, Dr. Vance maintains that the only proper way to show causation is through medical testimony. We have, however, permitted plaintiff lay persons to testify to their physical injuries and mental distress without supporting medical testimony. *Tulley v. Dasher,* 250 Md. 424, 244 A.2d 207 (1968) (nervousness, headaches, upset stomach). *Tulley* relied on *Wilhelm v. State Traffic Comm.,* 230 Md. 91, 185 A.2d 715 (1962), where the Court distinguished between situations where the cause of injuries need not be proved by expert testimony, and situations that required medical proof. The Court stated:

> "There are, unquestionably, many occasions where the causal connection between a defendant's negligence and a disability claimed by a plaintiff does not need to be established by expert testimony. Particularly is this true when the disability develops coincidentally with, or within a reasonable time after, the negligent act, or where the causal connection is clearly apparent from the illness itself and the circumstances surrounding it, or where the cause of the injury relates to matters of common experience, knowledge, or observation of laymen. . . ."
>
> *Id.* at 99.

These occasions were distinguished from situations involving complex medical questions, and especially cases turning on purely subjective symptoms or in instances where there is a significant temporal lapse between the disability and the negligent act. In the second type of situation proof of causation must be by expert testimony.

Applying *Wilhelm* to the circumstances of the present case, there was legally sufficient evidence before the jury that Muriel's injuries resulted from the disclosure of her true marital status.[5] Her injury related to matters of common

---

5. Although the record suggests that Muriel may have suffered from emotional difficulties which preceded her awareness of the invalidity of her marriage, Dr. Vance did not raise a causation issue with respect to such facts.

experience and knowledge of lay persons. Therefore, it was within the competence of ordinary lay persons to determine that the negligence of Dr. Vance was the cause of Muriel's condition.

### (3)

Dr. Vance contends that the Court of Special Appeals erred in holding that there was legally sufficient evidence before the jury to establish the separate and independent tort of intentional infliction of emotional distress. We agree.

We said in *Harris v. Jones,* 281 Md. 560, 380 A.2d 611 (1977), that four elements must coalesce to impose liability for the commission of this tort, viz:

"(1) The conduct must be intentional or reckless;

(2) The conduct must be extreme and outrageous;

(3) There must be a causal connection between the wrongful conduct and the emotional distress;

(4) The emotional distress must be severe."
281 Md. at 566.

At trial, Dr. Vance moved for a directed verdict on the intentional infliction of emotional distress count of Muriel's declaration on the ground that there was no evidence of any intentional conduct on his part in 1956, when the marriage took place, to inflict emotional distress upon Muriel. In granting the motion, the trial judge said that no evidence had been adduced to show that Dr. Vance's misrepresentation of his marital status in 1956 "was done at that time with the intention of the infliction of emotional distress upon Mrs. Vance." He pointed out that Muriel's declaration did not claim that the act of Dr. Vance, which amounted to the alleged intentional infliction of emotional distress, was the filing of the pleading in 1976 to annul the marriage.

In reversing the judgment granting the motion for a directed verdict, the Court of Special Appeals held that the trial judge was wrong in concluding that Dr. Vance's conduct must have been intentional in order to establish the tort. It suffices, the court said, "if the injury is inflicted by extreme and outrageous recklessness." *Vance v. Vance, supra,* 41 Md.

App. at 139. Finding that there was evidence of the four fused elements of the tort before the jury, the court said that it was a jury question "whether Dr. Vance's conduct was reckless to the point of being extreme and outrageous." *Id.* at 141. In so holding, the court did not indicate whether Dr. Vance's wrongful conduct was that committed in 1956 as the trial judge believed, or the act of filing in 1976 of the pleading to annul the marriage.

The count of Muriel's declaration charging the intentional infliction of emotional distress avers that Dr. Vance "knew for a period of almost twenty years that a previous marriage ... had not been dissolved at the time he was ostensibly wedded to the Plaintiff"; that Dr. Vance was guilty of extreme and outrageous conduct by "intentionally ... preventing the Plaintiff from the opportunity to validate their marriage by a later civil ceremony, and thereby legitimizing the issue of the apparent marriage"; and that "[t]he conduct of which Plaintiff complains is the Defendant's positive and intentional concealment of the fact of no timely dissolution of a previous marriage, which the Defendant had a duty to disclose." The count further alleges that Dr. Vance "concealed this information with the intent and purpose to cause Plaintiff to suffer severe emotional distress," and that he "knew that [Muriel] would be distressed by his intentional and malicious concealment, when once it was discovered, and to the type of outrageous conduct he displayed."

In her brief on appeal, Muriel states that the cause of action for intentional infliction of emotional distress "related to Dr. Vance's misrepresentation in 1956, not to the motion to annul" filed in 1976. It is thus readily apparent that the gist of the count is Dr. Vance's alleged intentional concealment that his marriage to Muriel was void; that his conduct in this regard was extreme and outrageous; and that it was intended to cause Muriel to suffer severe emotional distress upon discovery.

As to the first element of the tort — that the conduct must be intentional or reckless — we observed in *Harris v. Jones,* *supra,* 281 Md. at 566-67, that § 46 of the Restatement (Second) of Torts (1965), comment i, states, and the cases generally recognize, that the defendant's conduct is

intentional or reckless where he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct, or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow. As to whether the conduct of a defendant has been "extreme and outrageous," so as to satisfy that element of the tort, § 46 of the Restatement, comment d, states that "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

Dr. Vance's negligent misrepresentation as to his marital status in 1956, followed by his subsequent concealment of that fact for almost twenty years, could not, of itself, have caused Muriel to suffer emotional distress because she had no knowledge of it. As Dr. Vance suggests, there must have been a subsequent revelation under circumstances such as a deterioration of the marriage which would prevent the situation from being remedied. Consequently, there was no evidence from which the jury could have concluded that in 1956, when Dr. Vance told Muriel that he was free to marry her, that he could or should have anticipated that under the circumstances existing some twenty years later, he would reveal what he previously concealed and cause Muriel to suffer severe emotional distress. Thus, Dr. Vance could have had no knowledge of what his concealment would likely occasion, and therefore the record fails to disclose any evidence in support of the first or second elements of the tort. Accordingly, the directed verdict was properly entered by the trial court and the Court of Special Appeals was wrong in taking a contrary view.

> *As to the count of the declaration for negligent misrepresentation: judgment affirmed.*
> *As to the count of the declaration for intentional infliction of emotional distress: judgment reversed.*
> *Costs to be paid by the appellant.*