885 F.2d 866
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Judy M. SMITH, Plaintiff-Appellant,
v.
JEFFERSON COUNTY CHAMBER OF COMMERCE, INC., George Vickers,
Manager, Florence Hatfield, Lowell Hatfield, d/b/a
Country Trunks, James Does, (1-100),
Defendants-Appellees,
v.
Paul REMSBERG, t/a Remsberg's Tent Rentals, Third Party
Defendant-Appellee.
 No. 88-1765.
 United States Court of Appeals, Fourth Circuit.
 Argued June 6, 1989.
Decided Sept. 14, 1989.
 
 Leslie Allison Powell (Rogerr C. Simmons, Gordon, Simmons & Cornelison on brief) for appellant.
 Donald Kevin Krohn (Michael S. DeBaugh, Lord & Whip, P.A. on brief), Thomas V. Monahan, Jr. (Goodell, Devries, Leech & Gray on brief) for appellees.
 Before WIDENER and WILKINSON, Circuit Judges, and RICHARD L. VOORHEES, United States District Judge for the Western District of North Carolina, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant Judy Smith sustained a leg injury at a crafts festival in Charles Town, West Virginia, which was operated by appellee Jefferson County Chamber of Commerce ("JCCOC"). Although the facts are disputed, it is agreed that her leg struck a tent peg, resulting in physical injuries. Smith claims here injuries are due to negligence, both on the part of JCCOC and co-appellees, the Hatfields, who were exhibitors. Smith also sought to claim that she was the victim of negligent misrepresentation by JCCOC, due to an unkept promise by them to take care of her medical expenses. The district court dismissed the simple negligence claim as against the Hatfields for lack of personal jurisdiction, but permitted that claim to go forward as against JCCOC. The court also disallowed the negligent misrepresentation claim, which was offered as an amendment to the original complaint, as untimely.
 
 
 2
 Trial began in district court in Maryland, Smith's home state. The jury returned a verdict in favor of the defendants. Smith appeals, assigning error on assumption of risk, in personam jurisdiction and negligent misrepresentation. We affirm the judgment of the district court in all respects.
 
 I. ASSUMPTION OF RISK
 
 3
 West Virginia is a comparative negligence state. The district court instructed the jury that assumption of risk by the plaintiff, if proved, was a valid defense and would act as a complete bar to recovery from JCCOC. A defendants' verdict followed.
 
 
 4
 The accident involved one of numerous tent pegs used at the fair. There was conflicting evidence as to how the pegs were installed, how they were painted or otherwise made easier to see, and what degree of danger they represented to fairgoers. The circumstances of the individual peg with which Mrs. Smith collided were also hotly disputed. However, Mrs. Smith's testimony that she had seen the pegs before the accident, considered them dangerous, and took care to avoid them, was undisputed. The defense seized on these facts to argue that she had assumed the risk, and the court granted an instruction on the point.
 
 
 5
 This Court believes that the doctrine of assumption of risk was inapplicable to the facts of this case, and that the district court should not have instructed the jury on it. However, we also believe that the instruction was at most harmless error. There is ample support in the record for the verdict the jury reached.
 
 
 6
 "The doctrine of harmless error expressed in Rule 61 [of the Federal Rules of Civil Procedure] is applicable to errors in instructions to the jury, and whether such errors are harmless or prejudicial depends upon whether substantial rights of a party are affected thereby. This requires consideration of the instructions as a whole ... errors ... which do not affect substantial rights ... are not grounds for disturbing the verdict or judgment."
 
 
 7
 7 J. Moore, J. Lucas, Moore's Federal Practice, p 61.09, pp. 61-32--61-34 (footnotes omitted).
 
 
 8
 Because the district court declined to place an interrogatory regarding assumption of risk on the verdict sheet, we do not know whether the jury considered it or not. However, we cannot say that they would have reached a different verdict had they not been instructed upon the doctrine. Assumption of risk is a doctrine which acts to negate the defendant's negligence or unreasonableness when the plaintiff volunteers to meet the risk. In order for it to be applicable in the first place, there must first be some unreasonable or extraordinary danger, created by actions of the defendant, i.e., negligence. The jury disposed of this issue by answering "No" to the first issue, "Were George Vickers and the Jefferson County Chamber of Commerce, Inc. negligent?"[1] The giving of the instruction regarding assumption of risk prejudiced no substantial right of the plaintiff.
 
 
 9
 II. IN PERSONAM JURISDICTION OVER THE HATFIELDS
 
 
 10
 Appellees Lowell and Florence Hatfield conducted an exhibit at the fair in connection with their business "Country Trunks." Smith claimed they were partially liable for her injuries because they negligently placed their exhibits in a position where they obscured her view of the tent peg, which she might otherwise have seen and avoided. The district court ruled that the Hatfields, who are Virginians, did not have sufficient contacts with Maryland to be sued there.
 
 
 11
 We think the Hatfields' total contact with Maryland is insufficient basis for jurisdiction. The strongest showing of their contact with Maryland which appellant can make is evidence of their trips into Maryland to purchase trunks for their business. This might well suffice if Smith's cause of action had something to do with those purchases, e.g., if she bought a Maryland-source trunk from the Hatfields, it turned out to be defective, and she sued for breach of contract. Purchases from a state are of much less significance than sales into it. Shaffer v. Heitner, 433 U.S. 186 (1977). We believe this is not the case here; the events that led to the lawsuit would have been no different had the Hatfields gotten their trunks from any of the other 49 states. It would not be equitable to have on the shelf an item or two from some far-off state automatically subject a merchant to being haled into court in that state, just because a claimant happened to live there. Such is not the law, see Rosenberg Bros. & Co. v. Curtis Brown Co., 260 U.S. 516 (1923), Helicopters Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408 (1984); much more substantial transactions are needed. Nor is it persuasive that a good number of the Hatfields' customers come from Maryland. Since they exhibited their wares at a popular crafts fair, which most attendees reached by automobile, it was probable that most clients would come from West Virginia or a nearby state. There is no evidence that they cared whence their customers came.
 
 
 12
 The Hatfields are directly analogous to the "owner of a South Carolina motel" who "know[s] that a significant portion of his income is derived from residents of New York," but who should not, therefore, be required to "litigate in New York a suit brought by a patron who claims injury as a result of a fall in the South Carolina motel." Camelback Ski Corp. v. Behning, 312 Md. 330, 539 A.2d 1107 (1988) (following Camelback Ski Corp. v. Behning, 480 U.S. 901 (1987)). Appellant's claim that the Hatfields held themselves out to Marylanders as particularly willing to do business with them by being listed in the fair's brochure is unpersuasive. Hundreds of other space-renters were also automatically listed in the brochure by the proprietors of the fair. Such listing does not rise to the level of particularly doing business with Marylanders.
 
 
 13
 In view of the above, the district court did not err in finding the Hatfields not subject to suit in Maryland.
 
 III. NEGLIGENT MISREPRESENTATION
 
 14
 Plaintiff sought to amend her complaint to include a claim for negligent misrepresentation, based on her assertion that a JCCOC official promised full coverage of her medical expenses. This was denied as having been untimely requested. Smith assigns error to this and asks to be allowed to litigate this claim on remand. While the district court's reasoning may well have been a good ground for denial of the request, this Court holds that Smith suffered no damages due to the misrepresentation, if there was one. Smith received medical attention. There is no evidence that her medical care was in any way inferior to what she would have received had the alleged misrepresentation not been made. Smith claims that her credit rating has suffered as a result of her inability to pay her medical bills on time, but she admitted at deposition she was not aware of any bad credit rating.
 
 
 15
 Finally, only now in her second (but not first) appellate brief, Smith asserts that the harm was emotional distress. No supporting Maryland case law was cited, and it appears to the Court that damages for negligent infliction of emotional distress cannot be recovered in these circumstances under Maryland law. Maryland requires that to recover for negligent, as opposed to intentional, infliction of emotional distress, accompanying physical injury must be shown. Vance v. Vance, 286 Md. 490, 408 A.2d 728 (1979). Granted, Smith's leg was injured. That injury was in connection with a separately alleged tort--simple negligence--concerning which the jury found no fault on the part of JCCOC. Smith would have to show a separate physical injury in connection with the separate tort of negligent misrepresentation. She has not done so. Accordingly, a claim of damages for emotional distress would be improper.
 
 IV. CONCLUSION
 
 16
 As none of appellant's three assignments of error has merit, the judgment of the district court is
 
 
 17
 AFFIRMED.
 
 
 
 [1]
 Appellant suggests that it was the presence of the assumption of risk instruction that led the jury to give this answer in the first place. That is, had there also been an issue asking, "Did plaintiff Smith voluntarily assume the risk?," the answer to that would have been "Yes." But such would be an inconsistent verdict. Properly understood, the doctrine of assumption of risk cannot apply until defendant's negligence is first found to exist. We see no reason to think the jury misunderstood it, in light of Judge Motz's clear and concise instructions, and assume the jury considered the issues in the correct order