# THE WASHINGTON AND GEORGETOWN RAIL-ROAD COMPANY

*v.*

# DASHIELL.

RAILROADS; DAMAGES FOR NERVOUS SHOCK; MISCONDUCT OF COUNSEL IN ARGUMENT.

1. Damages are not recoverable in an action to recover damages for injuries received in a railroad collision, for any impairment of the plaintiff's nervous system resulting from a nervous shock received at the time of the collision, in addition to damages for the plaintiff's physical pain and suffering.

2. Alleged misconduct of counsel in the course of argument to the jury is not proper subject of exception, except in extraordinary cases where prejudice is the manifest object of the speaker; and never where the remarks objected to have been withdrawn.

No. 515. Submitted December 6, 1895. Decided January 6, 1895.

HEARING on an appeal by the defendants from a judgment on a verdict in an action to recover damages for personal injuries. *Reversed.*

## STATEMENT OF THE CASE.

This was an action brought by Fannie K. Dashiell against the Washington and Georgetown Railroad Company and the Rock Creek Railway Company, to recover damages for injuries alleged to have been received in a collision of two trains of those companies at the intersection of Fourteenth and U streets, northwest, in the city of Washington, on April 16, 1893, while she was a passenger on the train of the former company. The evidence showed that the Rock Creek Railway Company, which operated a street railway line running east and west along U street, had prior to that date run no cars east of Fourteenth street, but on that date commenced to run trains as far east as Seventh

street.   The Washington and Georgetown Railroad Company operated a street railway line running north and south along Fourteenth street.

At the trial, the following instructions were requested on behalf of the defendant, the Washington and Georgetown Railroad Company, but the court refused to grant the same, and the said defendant excepted:

" 3.  If the jury shall be satisfied from the evidence that the cars of the defendant, The Rock Creek Railroad Company, had been running to and from 14th street from the west and had not been regularly crossing 14th street prior to that time [April 16, 1893], and that the gripman running the train of Washington and Georgetown Railroad Company had not been notified that said Rock Creek Company would, on that day, regularly run its cars east over 14th street at its intersection with U street, and if they shall be further satisfied from the evidence that just before the collision complained of the gripman of the Washington and Georgetown Railroad Company approached U street with his train going north and a car of the Rock Creek Railroad Company was east of and near to 14th street going west, and that a flagman or conductor of said Rock Creek Company was beckoning to the motorman of the motor car to prooceed across 14th street, and that he did so, and that the gripman of the Washington and Georgetown Railroad Company slacked the speed of his train to allow time enough for the said car to cross along U street over 14th street, and that said gripman then started to cross U street in a reasonably careful manner, and that when he had got partially across his gripcar was struck by a car of the defendant, The Rock Creek Railroad Company going east and running at a rapid rate of speed, and that by such collision the plaintiff, who was on said grip-car, was injured, the verdict must be in favor of the defendant, the Washington and Georgetown Railroad Company.

"4.  If the jury shall find that the car of the Rock Creek Railway Company, in approaching 14th street and crossing

the same, was propelled at a greater speed than 9 miles an hour, and but for the increase of speed over 9 miles an hour the collision would not have happened, then the company was negligent in law."

Exceptions was also noted by the said defendant to the following paragraphs of the charge of the court below :

1. "What is reasonable care and diligence must always be determined and is always determined, when determined properly, by the particular surroundings and circumstances attending each case ; so that in this case you should be advised and should consider the evidence with that principle of law in view, that the danger there was of collision of trains passing upon each of these roads increased the care and diligence which should be exercised by the servants of each company in running its trains at this particular point, and the care and diligence with which they should look out for danger and by which they should avoid any accident or collision.    It was the duty of the parties in charge of the cars of each of these defendants upon approaching that place to keep a sharp lookout for trains upon the other road, and not to attempt to cross until satisfied that they could do so in safety."

2. "Now, it is said on behalf of the gripman of the Washington and Georgetown Railroad Company that he did not see the train approaching on the U-street road, the eastbound train, until it was too late for him to stop his car so as to avoid the collision and injury.    Notwithstanding that, if you believe that to be true, if you believe that to be the fact, that he did not as a matter of fact see the U-street train approaching in time to stop and avoid the collision, it is for you to still determine whether there is anything that appears in the evidence to excuse him for not having seen the approaching train on U street—whether, if he had used his eyes and kept a lookout such as the law requires of him in approaching a place of that character, he might have seen the U-street train in time to have stopped his car.    If he could have done so and did not use his eyes and keep a

lookout for approaching trains he was guilty of negligence for which his company would be liable."

3. "It is said that there was an intervening train passing down 14th street, south-bound, and that that may have intervened between the gripman and the U-street train coming from the west going east so as to prevent him from seeing the U-street train sooner than he did. As to that the evidence is not all one way. If that fact is at all material (and it may be well for you to determine it), you are to determine whether the south-bound train had not passed and did not pass the north-bound train upon which the plaintiff was, long enough before the U-street train approached so that the U-street train could have been seen as soon as it emerged from behind the buildings at the corner of U street. The testimony shows you at what distance from the crossing a person upon the 14th-street cars could have seen the approaching of the U-street car. If that was such a distance from the U-street crossing as that, under the circumstances, you believe the gripman could have stopped his car before reaching the U-street crossing so as to avoid the collision with the U-street car, then the gripman should have stopped his train if he saw the train coming. If he did not see the train coming as soon as he might have seen it, and if you find he might have seen it had he been diligent in looking out for an approaching train in time to avert the accident and did not do it, then the 14th-street company will be chargeable with negligence because of the want of proper and reasonable care on the part of its agent who was then running and managing this train."

4. "And I may say one thing more before I leave the 14th-street car. If a south-bound train stopped after it passed the U-street crossing or was in such a situation on the west track of the 14th-street road as to obscure the view of the gripman to the approach of the U-street car so that he could not see whether a train was approaching or not, it would have been his duty, necessarily, if he could not cross in safety, to have stopped his train until he could have

ascertained.    That would not have been, under the circumstances, the exercise of any extraordinary care or diligence, but only reasonable care and diligence ; and so as to the U-street road : The motorman upon that train, before he approached this crossing, should have known that he could cross in safety.    Either he should have stopped to have an examination made or he should have such other assurance as reasonable conduct and reasonable rules would require of him under such circumstances in order that he might pass over this place in safety without injury to anybody."

The further material facts will be found stated in the opinion of the court.

*Mr. Enoch Totten, Mr. J. S. Flannery* and *Mr. W. D. Davidge* for the appellant, the Washington and Georgetown Railroad Company:

1. It is error to give to the jury instructions not based on the evidence. *Railroad Co.* v. *Houston*, 95 U. S. 703. And a judgment rendered under such instructions will be reversed on appeal. *Bowles* v. *Lewis*, 58 Mo. App. 649 ; see also *Railroad Co.* v. *Gladmon*, 15 Wall. 401 ; *Ins. Co.* v. *Baker*, 94 U. S. 610 ; *Doone* v. *Canal Co.*, 164 Pa. St. 17. A charge that the jury, if they found for plaintiff, should give such a verdict as would compensate her for permanent injury, is error, where the permanency of the injury is in dispute. *Railway Co.* v. *Artusey*, 31 S. W. 319.

2. Where counsel, in argument to the jury, make statements unsupported by the evidence which tend to prejudice the jury, the judgment will be reversed. *Mfg. Co.* v. *Sterritt*, 62 N. W. 675 ; *Railroad Co.* v. *Bragonier*, 13 Brad. (Ill.) 467 ; *Railroad Co.* v. *Hancock*, 27 A. & E. R. Cases, 325 ; *Williams* v. *Railroad Co.*, 46 A. & E. R. Cases, 149 ; *Railroad Co.* v. *Cooper*, 70 Tex. 67. Nor is it sufficient that the objectionable remarks are subsequently withdrawn. or modified by counsel making them. *Iron Co.* v. *Field*, 16 South. R. 538 ; *Railroad Co.* v. *McLendon*, 26 S. W. 307.

There was no appearance for the appellant, the Rock Creek Railway Company.

*Mr. Franklin H. Mackey* and *Mr. Charles Cowles Tucker* for the appellee :

1. The plaintiffs' prayer, that the jury might consider, in estimating damages, the suffering plaintiff would probably endure in the future, taken in connection with the explanation of the court, was a correct statement of the law as to the measure of damages in this case. 1 Sedgwick on Damages (8th ed.), sec. 172, and cases cited. Compensation is recoverable by passengers for nervous shock. Id., secs. 861 and 866, and cases cited.

2. An exception, to be available, must be taken to some ruling of the trial court ; it cannot be taken to any statement or action on the part of counsel. In this case, no ruling of the court was excepted to, and no request made to set aside the verdict because of the alleged improper conduct of counsel; and hence no error on the part of the court can properly be assigned. Thompson on New Trials, sec. 957 *et seq.; Carter* v. *Carter*, 101 Ind. 451.

Mr. Chief Justice ALVEY delivered the opinion of the Court :

This action was brought by the appellee against the appellants to recover for personal injuries alleged to have been caused by the negligence of the appellants, while the appellee was a passenger on a street car of one of the appellants, the Washington and Georgetown Railroad Company. The accident occurred on the 16th of April, 1893, in a collision between the street cars of the Washington and Georgetown Railroad Company and those of the Rock Creek Railway Company, at the intersection of Fourteenth and U streets, northwest—the train of the former company running on Fourteenth street, and that of the latter company on U street. Both companies are sued as negligent contributors to the accident.

It is unnecessary to go into a recital of the facts. We have examined the case with great care ; and we find that the case was fully and carefully presented to the jury by the learned justice before whom the case was tried ; and in the various rulings made by him in the instructions given to the jury, and made the subjects of exception and assignment of error, we find no reversible error, except in one respect, and that relates to the question of damages.

The court below was entirely right in refusing to take the case from the jury ; and it was also right in refusing to grant the third and fourth prayers offered by the Washington and Georgetown Railroad Company. And we perceive no sufficient ground for the assignment of error in those parts of the general charge to the jury, numbered one, two, three and four, respectively, and to which exceptions were taken by the Washington and Georgetown Railroad Company. We think there were facts and circumstances in evidence sufficient to justify such instructions, and that they were not founded merely upon assumption, as contended by the defendants.

But in the instruction given at the instance of the plaintiff, and as explained in the general charge, as for what damages might be assessed, we think there was error. By the first prayer of the plaintiff, which was granted, the jury were instructed that if they found for the plaintiff, then, in estimating the damages, they had a right to take into consideration the evidence, if any, of the pain and suffering undergone by the plaintiff in consequence of her injuries. This was all right enough. But the court went farther, and instructed the jury, " that *in addition* to damages for the pain and suffering undergone by the plaintiff, they should also assess damages for *any impairment* of the plaintiff's *nervous system*, which they might believe from the evidence she had incurred as a direct result of the *nervous shock* received by her on the occasion of the collision, provided they believed from the evidence she had received such *nervous shock*. But, in estimating such damages, the jury were not

to consider any prospective suffering arising from mere conjecture, but only such as they might believe from the evidence there was a reasonable probability that the plaintiff might suffer.   And to entitle the plaintiff to recover damages for apprehended future consequences, there should be such a degree of probability of their occurring as amounted to a reasonable certainty that they would result from the injury.   This reasonable certainty, however, did not mean absolute certainty, but only reasonable probability."

Where a party has suffered physical injury, it seems to be well settled, that mental pain and suffering, attendant upon and as a natural incident of such bodily injury, may be considered as an element in estimating the damages· Wood's Mayne on Damages, page 73, sec. 54, and the extended note of the American editor, where the American cases are collated and reviewed.   But in this case the principle was carried much farther than that just stated, by the instruction of the court.   The jury were instructed that, *in addition* to damages for pain and suffering, they could award damages for *any impairment* of the plaintiff's *nervous system,* if such nervous impairment was produced as a direct result of the *nervous shock received by her on the occasion of the collision.*   Thus making the nervous shock and the consequences thereof, a separate and independent ground for awarding damages.   This is certainly a most indefinite element to be considered by the jury, and one that is most difficult, if not quite impossible, to regulate by any reasonable standard for assessing damages.   What is meant by *impairment of the nervous system, or a nervous shock?*   The nervous system, even to the most learned, has been found difficult to define with certainty and clearness, though we know that its functions are complex and manifold.   We may affirm of the nervous system, that one of its principal functions is to produce sensation ; that its ministration in the animal structure and life consists in part in rendering the mind cognizant of that which is taking place around it, and in enabling it to act upon the material world,

by the instruments with which the body is provided for the purpose. But this is but part of the very complicated functions that the system has to perform. How, then, are we to expect of an ordinary jury that they will be able to determine the nature and extent of the impairment of the nervous system, produced by what is termed a nervous shock? We all frequently suffer nervous shocks from one cause or another; but it would be most difficut to ascertain and determine, with any degree of certainty, to what extent, if any, our nervous systems are impaired by such shocks. We know that, from repeated scares or frights, persons are liable to have their sensibilities easily, and in some cases morbidly excited, and that seems to be the case here. But the law furnishes no remedy for such sensitive condition. To attempt to furnish a legal remedy in such case, would open the door to the wildest speculation. Without for a moment intimating that simulation existed in this case, yet the nature of such claim would render it easy of simulation; and if not simulated, the temptation would be strong to exaggeration, and the assigning of one cause for another in the production of the morbid state of the nervous sensibilities; and all this, though it might be without real foundation, would be most difficult to disprove by the party sought to be charged. Such claims for compensation are subject to all the objections to remote and speculative damages.

We are aware that there are some few cases to be found, and some text writers following those cases, in which the principle of the instruction to the court below is apparently sanctioned. But the great weight of authority is against it, and we cannot give our sanction to it.

There is another question raised by exception and assignment of error, and that is, as to certain remarks or reflections indulged in by the counsel for the plaintiff, in his closing argument to the jury, supposed to be calculated to produce prejudice in the minds of the jurors adverse to the pefendants. This is a matter resting so entirely in the dis-

cretion of the court below, in conducting the proceedings before it, that it is only in very extraordinary instances, and where prejudice is the manifest object of the speaker, that it becomes matter of exception for review on appeal, when such remarks or comments are allowed by the trial court. That great prejudice and wrong is frequently effected by the improper and unwarrantable comments of counsel, made without the support of the evidence, and beyond and outside of the legitimate scope of the subject of inquiry, is beyond question; and, in recent times, the courts of the country have frequently been called upon to counteract and relieve against such undue prejudice, and its effects, by silencing counsel and setting aside verdicts. Counsel have no privilege to comment upon matter beyond the limits of the evidence before the jury for their consideration, with a view to creating prejudice and inducing a finding not justified by the evidence. It is upon the facts given in evidence to the jury, and those alone, that the verdict must depend for its support and validity, without reference to any extraneous matter that may be suggested by counsel. But in this case, as the remarks objected to were withdrawn, there was no ground of exception, under any circumstances, left to the defendants.

For the reasons we have assigned, the judgment must be reversed, and a new trial awarded.

*Judgment reversed, and a new trial awarded.*