Joyce L. **WILLIAMS, et al., Appellants,**

v.

Mark D. **BAKER, et al., Appellees.**

No. 84–1508.

District of Columbia Court of Appeals.

Argued En Banc Sept. 9, 1988.
Decided April 9, 1990.

Robert D. Sokolove, with whom Linda S. Matlin, was on the brief, for appellants.

Laurence T. Scott, with whom Leo A. Roth, Jr., Washington, D.C., was on the brief, for appellees.

Before ROGERS,[1] Chief Judge, NEWMAN, FERREN, BELSON, TERRY, STEADMAN, and SCHWELB, Associate Judges, and REILLY, PRYOR,[2] and MACK,[3] Senior Judges.

BELSON, Associate Judge:

■ The issue on appeal is whether a mother can recover for emotional distress caused by witnessing her child suffer from negligently inflicted harm if the mother did not reasonably fear for her own safety as a result of the negligent conduct. We hold that she cannot.

## I.

Appellant Joyce Williams brought her three-year-old son, Keith Graham, to the emergency room of the Children's Hospital National Medical Center. Keith was suffering from malaise, sore throat, gagging, and a high fever. Keith was examined by Mark Baker, M.D., who diagnosed the child as suffering from a minor virus. Dr. Baker prescribed certain medications and released Keith to his mother's care.

Late that evening, Keith experienced a coughing spell that appeared to lead to a stoppage of breathing. Keith collapsed to the floor unconscious. He was taken by ambulance to Capitol Hill Hospital, where he was diagnosed as having acute epiglottitis, an inflammation of the lid-like structure overhanging the entrance to the larynx. He was treated with emergency intubation and medication, and was transferred to Children's Hospital in critical condition. Keith remained in intensive care for thirty-six hours and was hospitalized for ten days. Ms. Williams stayed with her son during the entire episode.

Ms. Williams, on her own behalf and on behalf of her son, filed a complaint against Dr. Baker and Children's Hospital "for damages for medical malpractice and negligent infliction of mental distress." The complaint alleges, among other things, that Dr. Baker was negligent in failing to diagnose correctly Keith's medical condition, thereby causing Ms. Williams severe mental distress. Ms. Williams claims that she suffered extreme anxiety from the time her son stopped breathing through his subsequent hospitalization; that she could not eat or sleep for several days after the incident; that for several months thereafter she suffered from bouts of sleeplessness, severe stomach problems, nausea and diarrhea; that she continues to worry about the possibility of brain damage to her child; and that she has been under the care of a psychiatrist.

■ A division of this court affirmed the trial court's order granting summary judgment on the mother's claim in favor of appellees.[4] *Williams v. Baker,* 540 A.2d 449 (D.C.1988) (vacated, June 21, 1988, Order). The division's ruling was based on

---

1. Judge Rogers was an Associate Judge of this court at the time of argument. Her status changed to Chief Judge on November 1, 1988.

2. Judge Pryor was Chief Judge at the time of argument. He was commissioned as a Senior Judge on November 2, 1988.

3. Judge Mack was an Associate Judge of this court at the time of argument. She was com-

missioned as a Senior Judge on December 1, 1989.

4. The trial court's order of summary judgment did not extend to the claim made on behalf of Ms. Williams' son. Pursuant to Super.Ct.Civ.R. 54(b), the trial judge caused the entry of a final judgment as to the mother's claim, thereby rendering it final and appealable.

the established rule in this jurisdiction[5] that there can be no recovery for negligently caused emotional distress unless the negligence caused contemporaneous and direct physical injury.[6] *See Asuncion v. Columbia Hosp. for Women,* 514 A.2d 1187, 1188 (D.C.1986); *Washington and Georgetown R.R. v. Dashiell,* 7 App.D.C. 507, 514–15 (1896); *Perry v. Capital Traction Co.,* 59 App.D.C. 42, 43, 32 F.2d 938, 939, *cert. denied,* 280 U.S. 577, 50 S.Ct. 31, 74 L.Ed. 627 (1929). On rehearing en banc, we abandon the requirement that to be compensable the emotional distress must be traceable to physical injury caused directly by defendant's negligence, but decline to adopt the much broader foreseeability of risk rule. We hold that one may recover for emotional distress[7] caused by witnessing injury to an immediate family member only if the claimant was in the zone of physical danger and as a result feared for his or her own safety. We will explain why we adopt this rule for the District of Columbia, and then apply it to appellant's claim.

## II.

It is still unthinkable that any one shall be liable to the end of time for all of the results that follow in endless sequence from his single act. Causation cannot be the answer; in a very real sense the consequences of an act go forward to eternity, and back to the beginning of the world.

Prosser, *Palsgraf Revisited,* 52 Mich.L. Rev. 1, 24 (1953).

██ It is fundamental in tort law that one can be held liable for negligence only if there was a duty, breach of that duty, and injury proximately caused by the breach. The existence of a duty, however, results ultimately from policy decisions made by the courts and the legislatures. *See generally id.*

The problem before us in this case is two-tiered. Before we address the question of whether one may recover for emotional injury resulting from observing physical harm to a third party, we must first determine the basis of liability in this jurisdiction for the negligent infliction of mental distress.

This jurisdiction has long followed the rule that there can be no recovery for negligently inflicted mental suffering that is not traceable to a direct physical injury. *See Washington and Georgetown R.R. v. Dashiell, supra,* 7 App.D.C. at 514–15; *Perry v. Capital Traction Co., supra,* 59 App.D.C. at 43, 32 F.2d at 939; *Parrish v. United States,* 123 U.S.App.D.C. 149, 150, 357 F.2d 828, 829 (1966). It has not been a sufficient predicate for recovery for emotional harm in this jurisdiction that a plaintiff show merely that the defendant's negligence resulted directly in some sort of physical impact or physical trauma to the plaintiff's person, and caused emotional injury as well. Rather the emotional injury must flow from direct physical injury. *See Asuncion v. Columbia Hosp. for Women,* 514 A.2d 1187, 1189 and n. 1 (D.C.1986). Thus, the approach adopted by this jurisdiction has been more stringent than that imposed by the so-called "impact rule"[8] which is discussed below.

This jurisdiction's requirement that to be compensable mental suffering must flow from physical injury is consistent with the historic reluctance of the common law to allow recovery for mental distress other than as an element of damages when an independent tort is established. Indeed, the common law did not impose a duty to guard against causing mental distress to

---

5. Under *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C. 1971), the division was legally bound to follow precedent that established the law of this jurisdiction.

6. We use the term "direct physical injury" to describe physical injury that results directly from impact caused by defendant's negligence.

7. For purposes of this opinion, we do not distinguish between "emotional" distress or injury and "mental" distress or injury.

8. We use the term "impact" in this discussion and throughout the opinion in its ordinary use, just as its use has developed under the impact rule. It means a violent physical contact, a striking together, a collision. *See* WEBSTER'S NEW WORLD DICTIONARY 703 (2d ed.1984).

others. It was thought that mental consequences are "so evanescent, intangible, and peculiar, and vary to such an extent with the individual concerned, that they cannot be anticipated, and so lie outside the boundaries of any reasonable 'proximate' connection with the act of the defendant." PROSSER AND KEETON, THE LAW OF TORTS § 12, at 55 (5th ed. 1984). In *Clark v. Associated Retail Credit Men,* the then highest court of this jurisdiction expressed the policy that prevailed as follows:

> The law does not, and doubtless should not, impose a general duty of care to avoid causing mental distress. For the sake of reasonable freedom of action, in our own interest and that of society, we need the privilege of being careless whether we inflict mental distress on our neighbors.

70 App.D.C. 183, 185, 105 F.2d 62, 64 (1939).

Turning from applications within the existing District of Columbia rule to situations in which the physical injury complained of resulted not directly from the negligent act but rather from the operation within the victim of the shock or fright occasioned by the negligent act, we understate the matter when we observe that there has been sharp disagreement among other jurisdictions on the circumstances in which recovery should be allowed. *See generally* PROSSER AND KEETON, *supra,* § 54, at 363; Annotation, *Right to recover for emotional disturbance or its physical consequences, in the absence of impact or other actionable wrong,* 64 A.L.R.2d 100, 126, 143 (1959), and cases cited therein;

Note, *Injuries from Fright without Contact,* 15 Clev.–Mar.L.Rev. 331 (1966).

Many American cases followed the rule laid out in the English case of *Victorian Railways Commissioners v. Coultas,* 13 App.Cas. 222 (P.C.1888), that there could be no recovery for the physical consequences of fright unless the original negligent act had caused direct and contemporaneous physical injury.[9] *See, e.g., Ewing v. Pittsburgh, C.C. & St. L. Ry.,* 147 Pa. 40, 23 A. 340 (1892), *overruled by Niederman v. Brodsky,* 436 Pa. 401, 261 A.2d 84 (1970); *Mitchell v. Rochester Ry.,* 151 N.Y. 107, 45 N.E. 354 (1896), *overruled by Battalla v. State,* 10 N.Y.2d 237, 176 N.E.2d 729, 219 N.Y.S.2d (1961); *Spade v. Lynn & B.R.R.,* 168 Mass. 285, 47 N.E. 88 (1897), *overruled by Dziokonski v. Babineau,* 375 Mass. 555, 380 N.E.2d 1295 (1978). This so-called impact rule has a three-fold rationale: that if there can be no recovery for mere fright, then there can be no recovery for the physical consequences of fright; that it is difficult to determine causation between the negligent act and the alleged physical consequences of mental disturbance, and it is not foreseeable that serious consequences will result from mere mental disturbance; and that the physical impact provides a guarantee that the mental disturbance is not fabricated, thereby preventing a flood of litigation.[10] *See Mitchell, supra,* 151 N.Y. at 109–110, 45 N.E. at 354–55; *Spade v. Lynn & B.R.R., supra,* 168 Mass. at 290, 47 N.E. at 89; *Robb v. Pennsylvania R.R.,* 58 Del. 454, 459–60, 210 A.2d 709, 712 (1965). In *Spade,* decided in 1897, the Supreme Judicial Court of Massachusetts stated:

**9.** *Victorian Railways* reversed a trial court's ruling that proof of impact was not necessary to allow a plaintiff to recover for physical and mental injuries occasioned by fright. 13 App. Cas. at 225. The impact rule adopted by *Victorian Railways* did not necessarily embrace the requirement that the emotional consequences result from the physical injury, as we have required in this jurisdiction. The holding of *Victorian Railways* was later abandoned by England in *Dulieu v. White & Sons,* 2 K.B. 669 (1901). *Dulieu* held that a plaintiff may recover for physical injuries resulting from negligently inflicted mental shock even if there was no physical impact. *Id.*

**10.** Physical injury or impact is not required where the infliction of emotional distress is intentional. *Clark, supra,* 70 App.D.C. at 186, 105 F.2d at 65. The outrageousness of the defendant's conduct provides a guarantee that the mental disturbance is serious and not feigned. *See* PROSSER AND KEETON, *supra,* § 12, at 57. We also observe that recovery for emotional distress in cases where the claimant has suffered direct physical injury has long been allowed without any showing of a physical manifestation of the emotional distress itself. *See id.* § 54, at 362–63. Our ruling does not affect such cases.

We remain satisfied with the rule that there can be no recovery for fright, terror, alarm, anxiety, or distress of mind, if these are unaccompanied by some physical injury; and, if this rule is to stand, we think it should also be held that there can be no recovery for such physical injuries as may be caused solely by such mental disturbance, where there is no injury to the person from without. The logical vindication of this rule is that it is unreasonable to hold persons who are merely negligent bound to anticipate and guard against fright and the consequences of fright, and that this would open a wide door for unjust claims, which could not successfully be met.

168 Mass. at 290, 47 N.E. at 89.

The vast majority of jurisdictions, however, have abandoned or refused to adopt the impact rule.[11] Most jurisdictions allow a direct victim[12] to recover for fright resulting in physical injury if he was in danger of physical injury and as a result feared for his own safety.[13] *See, e.g., Batalla v. State,* 10 N.Y.2d 237, 239, 176 N.E.2d 729, 730, 219 N.Y.S.2d 34, 35–36 (1961); *Waube v. Warrington,* 216 Wis. 603, 607, 258 N.W. 497, 498 (1935). *See also* RESTATEMENT (SECOND) OF TORTS §§ 313, 436 (1965). The basis of liability for endangering another's physical safety was articulated by Chief Judge Cardozo in the landmark case of *Palsgraf v. Long Island R.R.:* "The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension." 248 N.Y. 339, 344, 162 N.E. 99, 100 (1928). *See also* Prosser, *Palsgraf Revisited,* 52 Mich.L.Rev. 1, 24 (1953). This rule of allowing direct victims of a negligent act to recover for mental distress, sometimes called the zone of danger rule, has been adopted by the RESTATEMENT (SECOND) OF TORTS:

> If the actor's conduct is negligent as creating an unreasonable risk of causing bodily harm to another otherwise than by subjecting him to fright, shock, or other similar and immediate emotional disturbance, the fact that such harm results solely from the internal operation of fright or other emotional disturbance does not protect the actor from liability.

Section 436(2).

■ While this jurisdiction heretofore has allowed recovery only for mental dis-

---

**11.** The submissions of the parties and our research indicate that only six jurisdictions continue to adhere to the impact rule. *See M.B.M. Co. v. Counce,* 268 Ark. 269, 596 S.W.2d 681 (1980); *Howard v. Bloodworth,* 137 Ga.App. 478, 224 S.E.2d 122 (1976); *Kroger Co. v. Beck,* 176 Ind.App. 202, 375 N.E.2d 640 (1978); *Deutsch v. Shein,* 597 S.W.2d 141 (Ky.1980); *Van Hoy v. Oklahoma Coca–Cola Bottling Co.,* 205 Okla. 135, 235 P.2d 948 (1951); *Saechao v. Matsakoun,* 78 Or.App. 340, 717 P.2d 165 (1986). This jurisdiction can be said to follow the impact rule only in the sense that we have heretofore not allowed recovery for mental distress unless it was traceable to a physical injury caused directly by defendant's negligence. Such a direct physical injury can be inflicted only by an impact. *See Asuncion v. Columbia Hosp. for Women, supra,* 514 A.2d at 1188. Our rule, as we have indicated has been more restrictive than the impact rule as usually applied because it also has precluded recovery for the physical consequences of mental distress if the mental distress was not traceable to a physical injury. *See, e.g., Gilper v. Kiamesha Concord, Inc.,* 302 A.2d 740, 745–46 (D.C.1973) (plaintiff who became ill after biting into a roach while eating salad at a hotel dining room could recover if her illness was caused directly by the consump-

tion of the contaminated food, but not if her illness was only the result of her psychological reaction to finding the roach in her salad); *Hamilton v. Pepsi Cola Bottling Co.,* 132 A.2d 500, 503–04 (D.C.1957), *cert. denied,* 356 U.S. 961, 78 S.Ct. 1000, 2 L.Ed.2d 1068 (1958) (plaintiff may recover for physical injuries sustained as a result of drinking a bottled beverage which contained a paper match cover and matches if injuries resulted from drinking the beverage, but not if injuries resulted from her psychological reaction to the appearance of what was in the bottle).

**12.** We use the term "direct victim" here to describe the person seeking compensation for harm resulting from fear for his own safety as opposed to the safety of a third party.

**13.** A few jurisdictions have abolished the requirement that the mental distress result in physical injury or at least physical manifestation. *See, e.g., Leong v. Takasaki,* 55 Hawaii 398, 403, 520 P.2d 758, 762 (1974); *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 928, 616 P.2d 813, 820, 167 Cal.Rptr. 831, 838 (1980); *Bass v. Nooney Co.,* 646 S.W.2d 765, 772 (Mo. 1983).

tress that results from a direct physical injury, we now recognize that the wrong to the plaintiff is no less if the physical injury comes about as a result of the emotional distress. We hold that if the plaintiff was in the zone of physical danger and was caused by defendant's negligence to fear for his or her own safety, the plaintiff may recover for negligent infliction of serious emotional distress and any resultant physical injury, regardless of whether plaintiff experienced a physical impact as a direct result of defendant's negligence. As we discuss below, we do not reach in this case the question of whether one who is physically endangered by defendant's negligence may recover for serious and verifiable emotional distress in the absence of physical injury that results from the emotional distress.

■ We are persuaded that the zone of danger approach provides a sounder basis for recovery than the impact rule. *See generally* Pearson, *Liability to Bystanders for Negligently Inflicted Emotional Harm—A Comment on the Nature of Arbitrary Rules*, 34 U.Fla.L.Rev. 477, 488–90 (1982) [hereinafter *Comment on the Nature of Arbitrary Rules* ]. Once the physical consequences of fright are recognized as deserving of legal protection, it would be arbitrary to limit compensation to instances in which there has been an impact. The tortfeasor owes a duty of care to all persons who are physically endangered by the tortfeasor's negligent act, regardless of whether actual impact occurs. *Accord, Palsgraf, supra,* 248 N.Y. at 344, 162 N.E. at 100; *Waube, supra,* 216 Wis. at 607, 258 N.W. at 498. In common experience, "a near miss may be as frightening as a direct hit." Pearson, *Comment on the Nature of Arbitrary Rules, supra,* 34 U.Fla.L.Rev. at 488.

Moreover, requiring physical impact is no longer a necessary safeguard against fraudulent claims. Due to advances in medical research and improved diagnostic techniques, the presence of emotions such as grief, anxiety, and anger is frequently accompanied by physical indicia that are capable of objective proof. *See* PROSSER AND KEETON, *supra,* § 54, at 361; Comment, *Negligently Inflicted Mental Distress: The Case for an Independent Tort,* 59 Geo.L.J. 1237, 1248–51 (1971).

We are fortified in our decision to forego the requirement of an impact by the conviction that the connection between mere physical impact and mental injury is tenuous. While the theory behind the impact rule is that the occurrence of a contemporaneous physical impact guarantees the genuineness of the mental distress, a number of jurisdictions have allowed recovery for mental injury as long as there was any physical impact, no matter how insignificant.[14] As Justice Roberts of Pennsylvania stated in *Niederman v. Brodsky,* "It appears completely inconsistent to argue that the medical profession is absolutely unable to establish a causal connection in the case where there is no impact at all, but that the slightest impact ... suddenly bestows upon our medical colleagues the knowledge and facility to diagnose the causal connection between emotional states and physical injuries." 436 Pa. 401, 407, 261 A.2d 84, 87 (1970).[15]

While courts may well be faced with some dishonest claims, "the question of proof in individual situations should not be the arbitrary basis upon which to bar all actions." *Battalla v. State,* 10 N.Y.2d 237, 242, 176 N.E.2d 729, 731, 219 N.Y.S.2d 34, 38 (1961). Neither should fear of opening the gates to a flood of litigation be determinative of whether the interest in question should be legally protected. Even if that were a factor to be considered, we think it doubtful

---

14. *See, e.g., Homans v. Boston Elevated Ry.,* 180 Mass. 456, 62 N.E. 737 (1902) (slight blow); *Kentucky Traction & Terminal Co. v. Roman's Guardian,* 232 Ky. 285, 23 S.W.2d 272 (1929) (slight burn); *Porter v. Delaware, L. & W. R.R.,* 73 N.J.L. 405, 63 A. 860 (1906) (dust in the eye); *Morton v. Stack,* 122 Ohio St. 115, 170 N.E. 869 (1930) (inhalation of smoke).

15. *Niederman* 's holding adopting the zone of danger approach was later displaced by *Sinn v. Burd,* 486 Pa. 146, 404 A.2d 672 (1979), which adopted the foreseeability test over Justice Roberts' strong dissent.

that any significant amount of additional litigation will ensue from our ruling in this case, given especially our prerequisites for recovery. Any increase should be no greater than that already shouldered by most jurisidictions. In any event, if some increase in the litigation should materialize, "the courts must willingly cope with the task." *Robb v. Pennsylvania R.R.*, 58 Del. 454, 463, 210 A.2d 709, 714 (1965).

As we have seen, the zone of danger rule developed with the limitation that emotional distress can be compensable only if it results in physical injuries. The RESTATEMENT embraces this resulting physical injury requirement:

> If the actor's conduct is negligent as creating an unreasonable risk of causing either bodily harm or emotional disturbance alone, without bodily harm or other compensable damage, the actor is not liable for such emotional distress.

RESTATEMENT (SECOND) OF TORTS § 436A, comment c (1965). Three basic arguments have been advanced in support of the requirement that the mental distress result in physical injury: 1) mental distress which is not so severe as to have physical consequences is normally in the realm of the trivial; 2) in the absence of a guarantee of genuineness provided by the resulting physical manifestation, the emotional disturbance may too easily be feigned; and 3) where the defendant has been merely negligent, without any intent to do harm, the defendant's fault is not so great that he should be held liable for purely mental disturbance. *See* RESTATEMENT (SECOND) OF TORTS § 436A comment b.

Another comment to the RESTATEMENT, however, foreshadowed problems with application of the resulting physical injury requirement:

> The fact that [the different forms of emotional disturbance] are accompanied by transitory, non-recurring physical phenomena, harmless in themselves, such as dizziness, vomiting, and the like, does not make the actor liable where such phenomena are in themselves inconsequential and do not amount to any substantial bodily harm. On the other hand, long continued nausea or headaches may amount to physical illness, which is bodily harm; and even long continued mental disturbance, as for example in the case of repeated hysterical attacks, or mental aberration, may be classified by the courts as illness, notwithstanding their mental character. This becomes a medical or psychiatric problem, rather than one of law.

RESTATEMENT (SECOND) OF TORTS § 436A comment c.

The problems that inhere in distinguishing purely mental distress from mental distress resulting in physical injury has led our neighboring jurisdiction, Maryland, to apply the resulting physical injury requirement with considerable elasticity. Maryland deems the requirement satisfied as long as the defendant's negligence results "in some clearly apparent and substantial physical injury as manifested by an external condition or by symptoms *clearly indicative* of a resultant pathological, physiological, or *mental state*." *Vance v. Vance*, 286 Md. 490, 500, 408 A.2d 728, 733 (1979) (emphasis added) (quoting *Bowman v. Williams*, 164 Md. 397, 404, 165 A. 182, 184 (1933)). The Maryland approach bears out the RESTATEMENT comment's view that the issue becomes a medical or psychiatric problem, rather than strictly one of law. Some states, however, have abandoned the resulting physical injury requirement altogether. See cases cited in footnote 13, *supra.* Missouri, for example, views the physical injury requirement as arbitrary and allows recovery as long as the mental distress is medically diagnosable and "of sufficient severity so as to be medically significant." *Bass v. Nooney*, 646 S.W.2d 765, 772 (Mo.1983).

■ This appeal does not present the issue, and accordingly we take no position here on whether mental distress, to be compensable, must result in physical injury, but we share the view of the New York Court of Appeals that in furtherance of the policy of excluding recovery for trifling distress, the claimed distress must be "serious" and "verifiable." *Bovsun v. Sanperi*,

61 N.Y.2d 219, 231, 461 N.E.2d 843, 849, 473 N.Y.S.2d 357, 363 (1984).

## III.

Having adopted the zone of danger approach, in lieu of the impact rule, as the basis for liability to direct victims of tortious conduct, we are now left with the issue of whether a plaintiff can recover for the mental distress occasioned by witnessing harm to a third person. This is the sort of harm for which appellant seeks to recover here.

■ We adhere to the traditional rule that there can be no recovery for mental distress and its consequences resulting exclusively from observation of harm or danger to a third person. *See generally Amaya v. Home Ice, Fuel & Supply Co.*, 59 Cal.2d 295, 302–03, 379 P.2d 513, 517, 29 Cal.Rptr. 33, 37 (1963), *overruled by Dillon v. Legg*, 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968); *Waube v. Warrington*, *supra*, 216 Wis. at 613, 258 N.W. at 501; Pearson, *Comment on the Nature of Arbitrary Rules*, *supra*, 34 U.Fla.L.Rev. at 489–90; Annotation, *Right to Recover in Negligence for Fear of Injury to Another, or Shock or Mental Anguish at Witnessing Such Injury*, 29 A.L.R.3d 1337 (1970 & Supp.1989), and cases cited therein. "The plaintiff sues in her own right for a wrong personal to her, and not as the vicarious beneficiary of a breach of duty to another." *Palsgraf, supra*, 248 N.Y. at 342, 162 N.E. at 100. There are strong public policy considerations against imposing virtually infinite liability based on foreseeability when the conduct is merely negligent:

> It would be an entirely unreasonable burden on all human activity if the defendant who has endangered one person were to be compelled to pay for the lacer-

ated feelings of every other person disturbed by reason of it, including every bystander shocked at an accident, and every distant relative of the person injured, as well as all his friends.

PROSSER AND KEETON, *supra*, § 54, at 366.

Where the plaintiff was within the zone of physical danger and as a result of defendant's negligence feared for his or her own safety, however, it is reasonable to permit the plaintiff to recover as an element of damages mental distress caused by fear for the safety of a member of the plaintiff's immediate family who was endangered by the negligent act.[16] Having breached a duty of care to the plaintiff, the negligent tortfeasor should be held liable for all resultant damages. *Accord, Bovsun v. Sanperi*, 61 N.Y.2d 219, 229, 461 N.E.2d 843, 847, 473 N.Y.S.2d 357, 361 (1984); RESTATEMENT (SECOND) OF TORTS, *supra*, § 436(3). As the RESTATEMENT (SECOND) OF TORTS states:

> [T]he defendant, by his negligence, has endangered the plaintiff's own safety and threatened him with bodily harm, so that the defendant is in breach of an original duty to the plaintiff to exercise care for his protection. When such a duty is violated, the defendant is not relieved of liability for the bodily harm to the plaintiff which in fact results, by reason of the unusual and unforeseeable manner in which it is brought about.

Section 436 comment f.

Another reason for allowing recovery for fear of injury to another where the plaintiff was in the zone of danger and was placed in fear for his own safety is that in determining damages "there is no possibility of division of an emotion which was instantly evoked by the common and simultaneous danger of [the plaintiff and a member of the plaintiff's immediate family]."

---

**16.** Limiting to immediate family members the class of persons whose endangerment or injury, observed by claimant, may result in compensable emotional harm represents a policy decision. The language from PROSSER AND KEETON, § 54, at 366, quoted above, suggests that, absent such limitation, the potential class of such persons is open-ended. The adoption of a zone of danger test does not itself limit this class. As justification for this limitation, a comment to

the RESTATEMENT reasons that if the plaintiff is not related to the injured third party, "there may be sufficient uncertainty as to the genuineness or seriousness of the emotional disturbance to justify, as a matter of administrative policy, a denial of liability." RESTATEMENT (SECOND) OF TORTS, *supra*, § 436 comment h. We leave it to future cases, however, to determine the meaning of the term "immediate family."

*Bowman v. Williams,* 164 Md. 397, 403, 165 A. 182, 184 (1933). *See also* Pearson, *Comment on the Nature of Arbitrary Rules, supra,* 34 U.Fla.L.Rev. at 491. Although we take no position on the subject, we note that a number of zone of danger states have explicitly required that mental distress, to be compensable, must be serious enough to result in physical injury or manifestations. *See, e.g., Villamil v. Elmhurst Memorial Hosp.,* 175 Ill.App.3d 668, 670, 125 Ill.Dec. 105, 529 N.E.2d 1181, 1182 (1988); *Stadler v. Cross,* 295 N.W.2d 552, 553 (Minn.1980); *Vaillancourt v. Medical Center Hosp.,* 139 Vt. 138, 143, 425 A.2d 92, 95 (1980); *Shelton v. Russel Pipe and Foundry Co.,* 570 S.W.2d 861 (Tenn.1978). *But see Bovsun v. Sanperi, supra,* 61 N.Y.2d at 231–32, 461 N.E.2d at 849, 473 N.Y.S.2d at 363 (requiring only that the mental distress be serious and verifiable). *Cf. Vance, supra,* 286 Md. at 500, 408 A.2d at 733–34 (recovery allowed for mental injury that is capable of objective determination).

We are not persuaded that this jurisdiction should go beyond the zone of danger rule to allow bystander recovery for mental distress on the basis of the foreseeability of risk test adopted in *Dillon v. Legg,* 68 Cal.2d 728, 441 P.2d 912, 69 Cal.Rptr. 72 (1968). While a large number of jurisdictions have adopted some form of the *Dillon* foreseeability test for bystander recovery, accompanied by any number of arbitrary limitations, many have also explicitly rejected it in favor of the zone of danger rule.[17]

In *Dillon,* the California Supreme Court held that a mother may recover for the emotional trauma she suffered from witnessing the negligently caused death of her child even though the mother herself suffered no physical impact and was not with-

in the zone of danger. 68 Cal.2d at 741, 441 P.2d at 921, 69 Cal.Rptr. at 81. In rejecting the zone of danger rule it had adopted a short time before in *Amaya, supra,* the court stated that it would be arbitrary to deny recovery to the mother but to allow it to a sister who by "happenstance" was a few yards closer to the accident. *Id.* at 733, 441 P.2d at 915, 69 Cal. Rptr. at 75. The *Dillon* majority instead adopted a foreseeability of risk test for determining duty, and held that the mother had a cause of action because "the negligent driver who causes the death of a young child may reasonably expect that the mother will not be far distant and will upon witnessing the accident suffer emotional trauma." *Id.* at 741, 441 P.2d at 921, 69 Cal.Rptr. at 81.

*Dillon,* however, recognized that infinite liability cannot be attached to every negligent act, and therefore suggested guidelines for determining on a case-by-case basis whether the mental injury was "reasonably foreseeable": 1) Whether the plaintiff was near the scene of the accident; 2) Whether the shock resulted from a direct emotional impact upon the plaintiff from the sensory and contemporaneous observance of the accident; 3) Whether the plaintiff and the victim were closely related. 68 Cal.2d at 740–41, 441 P.2d at 920, 69 Cal. Rptr. at 79–80. The court also confined its ruling to cases in which the plaintiff's mental distress resulted in physical injury. *Id.* at 740, 441 P.2d at 920, 69 Cal.Rptr. at 80.

It is not clear, however, why these factors should determine whether in any particular case the mental injury of a bystander was a foreseeable consequence of a negligent act. "If foreseeability be the sole test, then once liability is extended the logic of the principle would not and could not remain confined." *Tobin v. Grossman,*

**17.** The following cases have explicitly rejected the foreseeability test in favor of the zone of danger: *McGovern v. Piccolo,* 33 Conn.Supp. 225, 372 A.2d 989 (1976); *Rickey v. Chicago Transit Auth.,* 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1, 5 (1983); *James v. Harris,* 729 P.2d 986 (Colo.Ct.App.1986); *Stadler v. Cross,* 295 N.W.2d 552 (Minn.1980); *Welsh v. Davis,* 307 F.Supp. 416 (D.Mont.1969); *Bovsun v. Sanperi,* 61 N.Y.2d 219, 461 N.E.2d 843, 473 N.Y.S.2d 357

(1984); *Whetham v. Bismarck,* 197 N.W.2d 678 (N.D.1972); *Shelton v. Russel Pipe and Foundry Co.,* 570 S.W.2d 861 (Tenn.1978); *Guilmette v. Alexander,* 128 Vt. 116, 259 A.2d 12 (1969); *Grimsby v. Samson,* 85 Wash.2d 52, 530 P.2d 291 (1975). Maryland and Wisconsin have not overruled their early case law adopting the zone of danger rule. *See Waube v. Warrington,* 216 Wis. 603, 258 N.W. 497 (1935); *Resavage v. Davies,* 199 Md. 479, 86 A.2d 879 (1952).

24 N.Y.2d 609, 616, 249 N.E.2d 419, 423, 301 N.Y.S.2d 554, 559 (1969). As stated in *Amaya, supra:* "What is the magic in the plaintiff's being 'present'? Is the shock any less immediate if the mother does not know of the accident until the injured child is brought home? And what if the plaintiff is present at the scene but is nevertheless unaware of the danger or injury to the third person until shortly after the accident has occurred?" 59 Cal.2d at 313, 379 P.2d at 524, 29 Cal.Rptr. at 44 (citations omitted). This failure to impose liability to the full extent of foreseeability has prompted many commentators to criticize the *Dillon* approach as arbitrary. *See generally* Diamond, *Dillon v. Legg Revisited: Toward a Unified Theory of Compensating Bystanders and Relatives for Intangible Injuries,* 35 Hastings L.J. 477, 489 (1984); *Limiting Liability for the Negligent Infliction of Emotional Distress: The "Bystander Recovery" Cases,* 54 S.Cal.L.Rev. 847, 861–62 (1981); Note, *Duty, Foreseeability, and the Negligent Infliction of Emotional Distress,* 33 Me.L.Rev. 303, 314–17 (1981); Pearson, *Comment on the Nature of Arbitrary Rules, supra,* 34 U.Fla.L.Rev. at 490–501.

In addition to being problematic analytically, the *Dillon* approach also has proved to be difficult to apply.[18] Only one year after *Dillon,* the California Court of Appeals allowed a mother to recover for the mental anguish caused by viewing her child's injuries moments after an accident. *Archibald v. Braverman,* 275 Cal.App.2d 253, 255, 79 Cal.Rptr. 723, 725 (1969). Another case held that *Dillon* does not require a visual perception of the impact causing the injury as long as the plaintiff is a "percipient witness" to the accident *Krouse v. Graham,* 19 Cal.3d 59, 76, 562 P.2d 1022, 1031, 137 Cal.Rptr. 863, 872 (1977). Intermediate California appellate courts also began allowing bystander re-

covery for mental distress in the absence of a blood or marital relationship. *See Mobaldi v. Regents of University of California,* 55 Cal.App.3d 573, 576, 127 Cal.Rptr. 720, 722 (1976) (allowing recovery to foster mother); *Ledger v. Tippitt,* 164 Cal.App.3d 625, 646, 210 Cal.Rptr. 814, 826 (1985) (allowing recovery to unmarried cohabitant). In *Mobaldi,* the court stated that "[t]he emotional attachments of the family relationship and not legal status are those which are relevant to foreseeability." 55 Cal.App.3d at 582, 127 Cal.Rptr. at 726. In a further extension of *Dillon,* the California Supreme Court allowed parents to recover for the mental distress they experienced as a result of watching their convulsive, hallucinating child receive fatally negligent medical treatment while confined iment while confined in a juvenile detention facility, where they perceived that the child was being harmed and their entreaties for permission to have the child treated by their private physician were rejected. *Ochoa v. Superior Court,* 39 Cal.3d 159, 168–170, 703 P.2d 1, 7–8, 216 Cal.Rptr. 661, 667–68 (1985). The court held that the injury to the child need not be the result of a brief and sudden occurrence and that recovery is permissible where there is contemporaneous awareness that defendant's conduct is causing harm to the child. *Id.*

In recent years, however, public policy considerations have prompted California to retreat from its initial expansive view of the foreseeability test. In *Elden v. Sheldon,* the California Supreme Court held that cohabitation alone was not sufficient to satisfy the close relationship requirement of *Dillon.* 46 Cal.3d 267, 273–74, 758 P.2d 582, 586, 250 Cal.Rptr. 254, 258 (1988) (en banc). While recognizing the foreseeability of an unmarried cohabitant relationship, the court stated that "policy considerations may dictate a cause of action should

18. For cases providing various interpretations of the *Dillon* guidelines, *see* Annotation, *Immediacy of observation of injury as affecting right to recover damages for shock or mental anguish from witnessing injury to another,* 5 A.L.R.4th 833 (1981 & Supp.1989); Annotation, *Relationship Between Victim And Plaintiff–Witness As Affecting Right To Recover Damages In Negli-*

*gence For Shock Or Mental Anguish At Witnessing Victim's Injury Or Death,* 94 A.L.R.3d 486 (1979 & Supp.1989); Annotation, *Right To Recover Damages In Negligence For Fear Of Injury To Another, Or Shock Or Mental Anguish At Witnessing Such Injury,* 29 A.L.R.3d 1337 (1970 & Supp.1989).

not be sanctioned no matter how foreseeable the risk." *Id.*

In *Thing v. La Chusa*, the California Supreme Court made the *Dillon* guidelines strict prerequisites to recovery. 48 Cal.3d 644, 647, 771 P.2d 814, 815, 257 Cal.Rptr. 865, 866 (1989). It held that "[i]n the absence of physical injury or impact to the plaintiff himself, damages for emotional distress should be recoverable only if the plaintiff: (1) is closely related to the injury victim; (2) is present at the scene of the injury-producing event at the time it occurs and is then aware that it is causing injury to the victim and, (3) as a result suffers emotional distress beyond that which would be anticipated in a disinterested witness." *Id.* at 647, 771 P.2d at 815, 257 Cal.Rptr. at 866.

Acknowledging California's retreat, the court in *Thing* cautioned that "contrary to the expectation of the *Dillon* majority, ... there are clear judicial days on which a court can foresee forever and thus determine liability but none on which that foresight alone provides a socially and judicially acceptable limit on recovery of damages for that injury." *Id.* at 668, 771 P.2d at 830, 257 Cal.Rptr. at 881.

Hawaii is another jurisdiction which is beginning to limit its initial expansive approach to the foreseeability test for bystander recovery. The Hawaii Supreme Court started off by categorically stating that there is a duty to guard against the negligent infliction of emotional distress. *See Rodrigues v. State*, 52 Haw. 156, 174, 472 P.2d 509, 520 (1970). It then abolished any requirement that the mental distress have physical consequences or that there be a marital or blood relationship between the bystander and the injured person, requiring only proof of the nature and severity of the mental distress. *See Leong v. Takasaki*, 55 Hawaii 398, 403, 410, 520 P.2d 758, 762, 766 (1974) (allowing recovery to child who suffered mental distress from witnessing automobile strike his stepfather's mother). The Hawaii court stated:

> [The *Dillon*] criteria, the proximity of the plaintiff-witness to the accident, the manner in which he witnessed it or

learned of it, his relationship to the victim and the foreseeability of his and the victim's presence to the defendant should not be employed by a trial court to bar recovery but should at most be indicative of the degree of mental distress suffered.

*Id.* at 410, 520 P.2d at 765–66.

The Hawaii court, however, later found reason for restraint, refusing to find liability when a grandfather living in California suffered a heart attack after being told that his daughter and granddaughter had been killed in an automobile accident in Hawaii that was the result of defendant's negligence. *See Kelley v. Kokua Sales & Supply, Ltd.*, 56 Hawaii 204, 208–09, 532 P.2d 673, 676 (1975). Noting that merely requiring proof of serious mental distress "does not realistically and reasonably limit" the negligent tortfeasor's liability, the court concluded that the injury to the grandfather was not a foreseeable result of the defendant's negligence. *Id.* Thus, ultimately, the Hawaii court made a policy decision that the negligent tortfeasor did not owe a duty of care to the distant grandfather.

The experience of both California and Hawaii confirms our view that this jurisdiction should not cast itself adrift on a sea of infinite foreseeability, subject only to such arbitrary limitation as we should impose. We recognize that the issue of whether a plaintiff can recover damages for fear of harm to a third person is a question of policy for the court, not one to be determined on a case-by-case determination of whether the injury was foreseeable.

We do not agree with *Dillon* that limiting recovery for mental distress to those within the zone of danger is arbitrary. As discussed above, liability in tort law is based on a breach of duty, and it is rational to postulate that the tortfeasor owes a duty of care only to those who are physically endangered by the tortfeasor's negligent act. *Accord, Dillon v. Legg, supra*, 68 Cal.2d at 750, 441 P.2d at 927, 69 Cal.Rptr. at 87 (Burke, J., dissenting); *Thing v. La Chusa, supra*, 48 Cal.3d at 672, 771 P.2d at 832, 257 Cal.Rptr. at 883 (Kaufman, J.,

concurring); Pearson, *Comment on the Nature of Arbitrary Rules, supra,* 34 U.Fla.L.Rev. at 490. We agree with the observation of the Court of Appeals of New York that:

> [T]he zone-of-danger rule provides a circumscribed alternative to the apparently sweeping liability recognized in *Dillon v. Legg,* and does so within the framework of traditional and accepted negligence principles by using an objective test of whether the plaintiff was unreasonably threatened with bodily harm by the conduct of the defendant. . . .

*Bovsun v. Sanperi, supra,* 61 N.Y.2d at 230, 461 N.E.2d at 848, 473 N.Y.S.2d at 362 (citation and footnote omitted).

We close this discussion by summarizing our holdings. We discard the requirement that, to be compensable, mental or emotional harm must be caused by physical injury to the direct victim of a defendant's negligence. We adopt the zone of danger rule which allows recovery for mental distress as long as the plaintiff was in the zone of physical danger and as a result feared for his or her own safety because of defendant's negligence. Because the plaintiff has a cause of action for a breach of duty that is owed to the plaintiff, the plaintiff may also recover as an element of damages for mental distress caused by fear for the safety of a member of the plaintiff's immediate family who was endangered by the negligent act. Bystander recovery for injury to a third person is otherwise not available.

### IV.

In the case before us, it was undisputed that the plaintiff mother was not physically endangered as a result of the defendant's alleged negligence in diagnosing and treating her son.[19] We therefore hold that the appellant mother cannot recover damages for the negligent infliction of emotional distress, and that summary judgment was properly entered in favor of the defendants.

*Affirmed.*

REILLY, Senior Judge, concurring in the result:

While I concur in the en banc order affirming the trial court's entry of summary judgment dismissing the claim of the mother of the co-plaintiff, I think we are making a serious mistake in refusing to adhere to the common law rule that there can be no recovery for emotional distress attributable to a negligent act unless such distress was the product of contemporaneous, direct and substantial physical injury caused by such action. This rule has prevailed in the District of Columbia since its formation almost two centuries ago. Neither Congress nor any local government legislative body has ever seen fit to change it.

When this case was first argued and decided by a division, we did note that numerous other jurisdictions overruled their own precedents. *See Williams v. Baker,* 540 A.2d 449 (D.C.1988). In my view, the reasons mentioned in that opinion, which justified the old rule, *viz.,* that (1) fright or grief are such passing phenomena that lasting mental disability is not ordinarily foreseeable, and (2) that mental disability can easily be feigned as it is a disease defying diagnosis, are still compelling.

Although I am relieved to note that the zone of danger rule which the court is now adopting does place some limits on frivolous or dishonest law suits, I am unpersuaded that we should follow the example of other courts, which seem to be infatuated with the idea of "keeping up with the Joneses."

---

**19.** It is readily apparent that in the vast majority of instances, a plaintiff will find it impossible to establish that plaintiff was within a zone of danger created by a medical misdiagnosis of a family member. Diagnoses, by their nature, tend not to create immediate danger to others. Plaintiffs seeking to recover damages for medical misdiagnoses of third persons have fared poorly under all theories of liability. *See, e.g., Frame v. Kotheri,* 115 N.J. 638, 560 A.2d 675 (1989); *Pate v. Children's Hosp.,* 158 Mich.App. 120, 404 N.W.2d 632 (1986); *Wilson v. Galt,* 100 N.M. 227, 668 P.2d 1104, *cert. quashed,* 100 N.M. 192, 668 P.2d 308 (1983); *Amodio v. Cunningham,* 182 Conn. 80, 438 A.2d 6 (1980).

FERREN, Associate Judge, concurring in part and dissenting in part, with whom NEWMAN, Associate Judge, and MACK, Senior Judge, join:

I join in the majority's opinion as far as it goes, but I respectfully dissent from two rules announced in Part III that limit the right to recover for negligent infliction of emotional distress caused by injury or danger to third persons. First, I would not limit recovery to situations in which the plaintiff is in the "zone of physical danger." Second, I would not limit such bystander recovery to members of an endangered party's "immediate family," even if that term is left undefined. Finally, I would go further than the court in Part II and explicitly state that no physical manifestation of emotional distress is required for recovery as long as the distress is "serious" and objectively "verifiable."

## I.

If emotional distress from actual or potential injury to a third party is to be compensable at all, I do not understand why there should be a rule limiting recovery to persons who themselves are physically endangered by the act or omission endangering the third party. The court imposes a limitation which to me is a nonsequitur: "I can recover for an injury to you if—but only if—I almost got injured myself." I agree with the California Supreme Court, see *ante* at 1070, that it would be too arbitrary, for example, to deny recovery for emotional distress to a mother who witnessed her child killed in an accident but to allow recovery to a sister who was a few yards closer. *See Dillon v. Legg*, 68 Cal.2d 728, 733, 69 Cal.Rptr. 72, 75, 441 P.2d 912, 915 (1968). The majority's opinion attempts to justify its "zone of danger" restriction by invoking the maxim that "liability in tort law is based on a breach of duty...." *Ante* at 1072. But, as the court's opinion acknowledges, "[t]he existence of a duty ... results ultimately from policy decisions made by the courts and the legislatures." *Ante* at 1064. Thus, we must look at what policy considerations, if any, support the "zone of danger"

limitation on recovery for distress caused by injury or danger to a third party.

The court is obviously concerned, as it should be, with avoiding "a sea of infinite foreseeability." *Ante* at 1072. But there are any number of possible *finite* sets of people—including all those who witness a negligent act or omission—to whom the court could decide a negligent tortfeasor owes a duty. I agree that it makes sense to limit recovery to those in the zone of danger if the recovery is for emotional distress about danger or injury to oneself. As a matter of policy, we can reasonably conclude, as we do today, that distress about one's own safety is most likely to be genuine if the plaintiff was actually endangered by the negligent act or omission. See *ante* Part II. The same cannot be said, however, about recovery for distress over another. I do not believe that the fact that a person was almost ensnared by the same act of negligence that injured or endangered a third party makes the first person's distress at the third party's situation any more, or less, credible than it otherwise would be. *See Dillon*, 68 Cal.2d at 774, 69 Cal.Rptr. at 77, 441 P.2d at 917; W. KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 54 at 366 (5th ed. 1984) ("It seems sufficiently obvious that the shock of a mother at danger or harm to her child may be both a real and a serious injury.").

I therefore am satisfied that, for purposes of articulating, however arbitrarily, the reasonably foreseeable risk that defines a potential defendant's duty of care, bystander recovery should be limited—but may be extended—to all negligent acts or omissions the potential plaintiff actually witnesses. That is to say, I believe a negligent tortfeasor has a duty not to cause physical harm to persons within the zone of danger *and* not to cause serious emotional harm (as defined below) to all those—within the zone of danger or not—who witness a negligent act or omission. I agree with those who argue that a potential defendant should not be expected to anticipate emotional harms that arise away from the scene of the negligent conduct itself. *See, e.g., Kelley v. Kokua Sales and Supply, Ltd.*, 56 Haw. 204, 208–09, 532 P.2d 673,

676 (1975). But that scene should not be as narrowly defined as the zone of physical danger. If the focus is solely on alleged distress at a third party's endangerment, then the plaintiff can be just as distressed at witnessing that endangerment from beyond the zone of danger as from within it. *See Dillon.*

## II.

The next question, then, becomes: what is compensable "serious emotional harm"? One way of assuring the seriousness of the harm, and thus the credibility of a claim for emotional distress about a third person, is to limit the class of persons entitled to recover to plaintiffs who have a close personal relationship with the endangered party. I agree with this approach but do not concur in the court's limitation to members of one's "immediate family." One can be seriously distressed about injury to anyone with whom one has a close personal relationship, including a favorite (even child-rearing) aunt or a "significant other" with whom one lives. While the court leaves open the definition of "immediate family," see *ante* at 17 n. 16, I believe the term itself connotes a relationship based on legal status and does not necessarily capture all those relationships which foreseeably would give rise to genuine distress upon witnessing another endangered by a negligent act or omission. I would permit a jury to evaluate whether a "close" or "significant" personal relationship under the circumstances is equivalent to the kind of bond one normally associates with a member of one's immediate family, such that the emotional distress can be perceived, objectively, as equivalent to the distress one would be likely to experience from danger to an immediate family member.[1]

Similarly, I am pleased that the court, in announcing a framework for analyzing future cases, leaves open the question whether there should be a limitation on recovery for emotional distress to cases in which such injury itself has a physical manifestation or results in some kind of physical injury. I personally would go further to state that no physical manifestation is required as long as the distress is "serious" and objectively "verifiable." *See Bovsun v. Sanperi,* 61 N.Y.2d 219, 231, 473 N.Y. S.2d 357, 363, 461 N.E.2d 843, 849 (1984). For me, a "physical manifestation" limitation as a means of assuring a claim's credibility would make no more sense than the "zone of danger" and "immediate family" limitations which the court's opinion imposes (after properly abandoning the obsolete direct physical injury requirement).

## III.

Putting these concerns together, I suggest the following test for serious and verifiable emotional distress about danger or injury to a third party: damages for negligently inflicted emotional distress are recoverable if, but only if, the plaintiff (1) has a close personal relationship with a person who is physically endangered by the defendant's negligence, (2) is present at the scene of the negligent act or omission and is, at the time, aware of the danger to the third party, and (3) as a result, suffers emotional distress beyond what a disinterested witness would have suffered and beyond what the plaintiff would have otherwise suffered if not present at the scene of the negligent act or omission. *See Thing v. La Chusa,* 48 Cal.3d 644, 667–68, 257 Cal.Rptr. 865, 880–81, 771 P.2d 814, 829–30 (1989) (establishing similar test).

The third prong of the test is necessary to prevent recovery for the normal grief or

---

1. The limitation to plaintiffs having a "close personal relationship" with the endangered third party could be expressed, alternatively, as a limitation on the negligent tortfeasor's duty. Instead of a duty not to cause serious emotional harm to "all those—within the zone of danger or not—who witness a negligent act or omission," *supra* Part I, the duty could be not to cause serious emotional harm to "all those—within the zone of danger or not—who have a close personal relationship with the endangered party and who witness a negligent act or omission." The idea in narrowing the duty this way would be that "serious emotional harm" is foreseeable only when someone with such a close relationship witnesses the danger. Whether the limitation is characterized as part of the evaluation of the claim's credibility or of the class of persons to whom the duty is owed, the result is the same.

distress that always accompanies the knowledge that a person with whom one shares a close personal relationship has been injured or endangered. If such normal distress were compensable, it would make no sense to limit recovery to those who witnessed the negligence, and the result would be the infinite liability which courts and commentators alike have eschewed. This prong of the proposed test would bar appellant's claim here. Her distress was not the result of witnessing appellee's alleged negligence—a misdiagnosis—but was the ordinary distress any mother experiences when her child is hospitalized and in critical condition.