558 F.3d 526

**Grace HUDSON and Karim Clayton, Appellees**

v.

**DISTRICT OF COLUMBIA et al., Appellants.**

**Grace Hudson, Cross–Appellant**

v.

**District of Columbia et al., Cross–Appellees.**

Nos. 07–7078, 07–7082.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 8, 2008.

Decided March 3, 2009.

Q. Officer Merritt, I was asking you isn't it true that you were brought up on charges based upon actions you took relative to a female at a club?

A. Yes.

Q. And didn't that involve accusations of you having taken physical actions against her?

A. They were accusations.

Q. And you had a trial board about that, didn't you?

A. Yes.

Q. And at that trial Board those accusations were sustained were they not?

[Defense Counsel]: Objection, your Honor.

The Court: This is cross-examination. This is legitimate cross-examination.[3]

[To Clayton's Counsel]: Continue. . . .

By [Clayton's Counsel]:

Q. Were they not?

A. No, not all.

Q. Some of them were?

A. Just, just the acts unbecoming.

Q. Acts unbecoming of a police officer?

A. Right.

Q. How many?

A. One.

Q. Just one?

A. One. It covered the whole, covered the whole thing. That one statement, that one acts unbecoming covers the whole thing.

Q. Just one, nothing about false reports?

A. No, not that I can remember.

Q. And nothing about your use, your improper use of force?

A. Not that I can remember that, no. *Id.* at 113–14.

During closing, Clayton's counsel first purported to remind the jurors that Merritt testified he had been suspended for "[m]aking a false statement" (which the court characterized as "close to what the evidence was") and "using . . . inappropriate force on a woman outside of a night club." 8/31/2005 Trial Tr. at 88. The court overruled defense counsel's objection to the statements and refused his request to strike them. Clayton's counsel then continued (again over defense counsel's objection):

That's Merritt. He was only suspended for a year, a year. As he says for conduct unbecoming an officer. You're kidding. Lying on a report and using inappropriate force on a woman outside of a nightclub, you're right that its conduct unbecoming.

* * *

[B]efore coming back and getting on that beat, he had been suspended for a year for misconduct.

Let me tell you something. You're not a bad cop on Monday and a good cop on Tuesday. It don't work like that. If you were a bad cop on Monday, you're a bad cop on Tuesday. You're a bad cop on Wednesday, you're a bad cop on Thursday, and you're a bad cop on Friday. You may not get caught on Tuesday, Wednesday, Thursday, and Friday, but you are a bad cop nevertheless.

And you know from Officer Merritt himself that he was a bad cop. And

---

**3.** It was at this point the trial judge erroneously opened the door for Clayton's counsel to ask wide-ranging questions about Merritt's prior bad acts—an invitation Clayton's counsel exploited. Even if the earlier questions were arguably proper as impeachment, the inquiry into the trial boards' substance—to which defense counsel plainly objected—was unrelated to anything but Merritt's prior misconduct, namely "improper use of force" and filing "false reports." Allowing such questioning lay the groundwork for Clayton's counsel to exploit the alleged prior misconduct in his closing as proof of conforming misconduct in this case.

Officer Merritt can't change and become a good cop overnight. Good cops don't get, good cops don't get suspended from work.

*Id.* at 88, 93–94. At this point defense counsel interjected: "Objection, Your Honor. This is arguing from past misconduct that there is a future inclination for that which is our objection to the original evidence and it's a continuation." *Id.* at 94. The court responded: "I think you made that point. Why don't you just move on." *Id.* Clayton's counsel then continued his closing argument.

After instructing the jury, the court asked counsel: "Is there any other instructions that counsel wishes me to give the jury before we release them to begin their deliberations?" 9/1/2005 Trial Tr. at 39. During the colloquy that followed, defense counsel informed the court: "I just wanted to make a record because we still have problems with [Clayton's counsel]'s argument yesterday that the cop is a bad cop on day one, day two." *Id.* at 41. The judge replied: "[Y]ou can expand on that after the jury goes." *Id.* The jury then retired to begin deliberating. At that point, as directed by the judge, defense counsel renewed his objection that Clayton's counsel "made an argument that [defense counsel did]n't think is allowed under the rules of evidence as propensity, that he's claiming that the officer had a propensity to be violent and to lie." *Id.* at 44. In addition, he requested a curative instruction, which the court denied because it had "sustained" the defendants' objection to the "bad cop" argument and because she "d[id]n't recall [a] request for a curative instruction prior to the time that the jury retired to deliberate" and she did not believe she could give such an instruction at that time "without giving it unduly." *Id.* at 45.

It was a violation of Rule 404(b) for the trial judge to permit Clayton's counsel to elicit testimony about Merritt's purported history of anger, using "improper use of force" and filing "false reports." 8/25/05 Trial Tr. at 103, 114. Such testimony is evidence of prior bad acts introduced "to show action in conformity therewith" and is therefore prohibited under Fed.R.Evid. 404(b). *Cf. United States v. Simpson,* 992 F.2d 1224, 1228–29 (D.C.Cir.1993) (permitting prosecutor to cross-examine defendant about prior narcotics possession was reversible error under Rule 404(b)). The court compounded its error when it permitted Clayton's counsel to exploit the 404(b) questioning during closing to indict Merritt as a "bad cop" every day of the week and declined to provide a curative instruction either sua sponte, in response to the District's repeated objections, or after the District expressly requested such an instruction immediately after the jury retired to deliberate. *See United States v. Rhodes,* 886 F.2d 375, 382 (D.C.Cir.1989) (noting prejudicial effect of prosecutor's reference in closing argument to impermissible 404(b) evidence). The cumulative effect of the inadmissible evidence and the inflammatory argument based on it is precisely what Rule 404(b) prohibits: exhorting a jury to find against a defendant because he acted "in conformity" with his bad acts—here, a purported history of physical violence, "improper use of force" and filing "false reports." 8/25/2005 Trial Tr. at 113–14. And to all appearances, the jury may well have been persuaded by the testimony. The error cannot be deemed harmless as the trial was hotly contested and turned largely on credibility.

 Clayton and the trial court have asserted that the District waived the Rule 404(b) objection by not making it at trial. *See* Appellees' Br. at 36; *Hudson,* 517 F.Supp.2d at 52. But defense counsel in fact made a timely objection during the trial. As noted above, during the bench

conference regarding the "trial boards," defense counsel addressed the court as follows: "Is this evidence of prior misconduct to show on this particular date that he is inconsistent [sic]? That's not allowed by the rules." 8/25/2005 Trial Tr. at 105. While the phrasing may have been somewhat inartful (and perhaps mistranscribed), it was stated with "enough specificity to alert the district court and opposing counsel to the basis for the objection," namely that the examination violated Rule 404(b). *United States v. David,* 96 F.3d 1477, 1480 (D.C.Cir.1996). Further, the District did not waive the right to a curative instruction by waiting until after the jury retired to request one. The trial court itself directed defense counsel to wait until "after the jury goes" to "expand on" the objection made after the instructions, *see* 9/1/2005 Trial Tr. at 41, and defense counsel merely obeyed the court's directive.

### B. Hudson

■■ Next, we address Hudson's appeal from the district court's judgment as a matter of law on her claim for intentional infliction of emotional distress and the vacatur of her damages award.[4] The court reviews *de novo* the trial court's denial of a motion for judgment as a matter of law and may reverse "only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Muldrow,* 493 F.3d at 165 (internal quotation omitted). We conclude that the district court correctly granted judgment on Hudson's claim.

At trial, Hudson sought to recover for the emotional distress she allegedly suffered as a result of watching her grandson Clayton's being beaten by Merritt. She testified that, while watching the altercation, she felt "afraid for him," "apprehensive" and "worried" and that for two days afterward (before she saw him again) she was "apprehensive," "wondering how he was doing" and "just worried about him and also [her]self" but she felt "better" after seeing him in the hospital. 8/24/2005 Trial Tr. at 18, 20–21, 29. She also said she was "despondent" and "just ready to cry" when she looked at the blood in her living room carpet. *Id.* at 26. Finally, she testified she did not want Clayton at her home as much as before the incident because she felt "tense" that there were "so many police around [her] house or coming up [her] street" and she would "rather for him to stay with his mother and not come see [Hudson] like he used to." *Id.* at 30.

In the April 2, 2007 memorandum opinion and order, the court granted judgment as a matter of law on Hudson's claim, concluding that her "feelings, though arising from lamentable circumstances [we]re not of sufficient duration or severity to be considered serious under District of Columbia law." 517 F.Supp.2d at 48. We agree with the district court's determination because the trial record reveals only general, subjective feelings of worry and concern and not the kind of serious, verifiable emotional injury that D.C. law requires to support a claim of emotional distress. *See Williams v. Baker,* 572 A.2d 1062, 1068 (D.C.1990) (en banc) ("[I]n furtherance of the policy of excluding recovery for trifling distress, the claimed distress must be 'serious' and 'verifiable.' ").

---

4. There is no question that Hudson's notice of appeal—filed on May 15, 2007, within the 14-day window following the timely filing of the District's notice on May 2, 2007—was timely. *See* Fed. R.App. P. 4(a)(3) ("If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.").

**18**

For the foregoing reasons, we affirm the district court's judgment as a matter of law on Hudson's emotional distress claim, vacate the verdicts in Clayton's favor on the excessive force, assault and battery, false arrest and malicious prosecution claims and remand for a new trial on the four latter claims.

*So ordered.*