# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued September 8, 2008          Decided March 3, 2009

No. 07-7078

GRACE HUDSON AND KARIM CLAYTON,
APPELLEES

v.

DISTRICT OF COLUMBIA *ET AL.*,
APPELLANTS

———

No. 07-7082

GRACE HUDSON,
CROSS-APPELLANT

v.

DISTRICT OF COLUMBIA *ET AL.*,
CROSS-APPELLEES

———

Appeals from the United States District Court
for the District of Columbia
(No. 02cv02217)

———

2

*James C. McKay, Jr.*, Senior Assistant Attorney General, Office of the Attorney General for the District of Columbia, argued the cause for the appellants/cross-appellees. *Peter J. Nickles*, Attorney General, *Todd S. Kim*, Solicitor General, and *Donna M. Murasky*, Deputy Solicitor General, were on brief.

*Gregory L. Lattimer* argued the cause for the appellees and cross-appellant.

Before: SENTELLE, *Chief Judge*, and HENDERSON and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Appellants the District of Columbia (D.C.), Metropolitan Police Department (MPD) Officer Richard Merritt and former MPD Officer John Hackley (collectively, District) appeal jury verdicts finding them liable to Karim Clayton for assault and battery, false arrest and malicious prosecution under D.C. law and for using excessive force against Clayton in violation of section 1 of the Civil Rights Act of 1871, as amended, 42 U.S.C. § 1983, and the Fourth Amendment to the United States Constitution. We conclude that the district court erred when it allowed Clayton's counsel to question Merritt about disciplinary actions allegedly brought against him for "improper use of force" and filing "false reports" and then to argue to the jury, in inflammatory terms and unpalliated by a curative instruction, that Merritt acted in conformity with his past "bad cop" conduct when he struck and arrested Clayton here. Because the challenged questioning and argument invited the jurors to find Merritt used excessive force against and falsely arrested Clayton based on similar "prior bad acts," in violation of Federal Rule of Evidence 404(b)—an invitation the jurors may well have embraced—we vacate the verdicts in Clayton's favor and remand for a new trial on the underlying claims. In addition, we affirm the district court's post-trial grant of judgment as a matter of law setting aside the

jury verdict in favor of Grace Hudson, Clayton's grandmother, on her claim of negligent infliction of emotional distress.

**I.**

Sometime during the evening of November 8, 2001, Merritt and Hackley, who were patrolling in a marked police car, stopped in the 600 block of Keefer St. NW and got out of their car. There followed a confrontation between the officers and two individuals, Clayton and his friend Gad Doreus, the details of which were disputed at trial. It is undisputed, however, that during the encounter Merritt gave chase to Doreus, Clayton and Doreus escaped into Hudson's nearby house, closing the door behind them, and Merritt pursued them inside. A scuffle ensued during which Hudson was knocked to her living room floor and, in the end, Clayton was arrested on the charge of assaulting an officer. At some point Merritt struck Clayton at least once. In a subsequent criminal trial in D.C. Superior Court, Clayton was acquitted of one count of assault and one count of possessing a prohibited weapon.

On November 8, 2002, Clayton and Hudson filed the complaint in this action, alleging causes of action for excessive force, assault and battery, false arrest, malicious prosecution and negligent or intentional infliction of emotional distress based on Merritt's and Hackley's conduct the night of November 8, 2001. On September 2, 2005, after an eight-day trial, a jury returned a verdict against the District, awarding Hudson compensatory damages of $25,000 on her claim of negligent infliction of emotional distress and Clayton compensatory damages totaling $81,000 and punitive damages totaling $15,000 on his claims of excessive force, assault and battery, false arrest and malicious prosecution.

On September 30, 2005, the District filed a motion for a new trial on all of Clayton's and Hudson's successful claims, for judgment as a matter of law on Clayton's false arrest and

malicious prosecution claims and for remittitur of Clayton's false arrest award. In a memorandum opinion and order filed April 2, 2007, the district court denied the motion as to Clayton's claims but granted judgment as a matter of law on Hudson's claim for negligent infliction of emotional distress, vacating her damage award. *Hudson v. District of Columbia*, 517 F. Supp. 2d 40, 57 (D.D.C. 2007). The District and Hudson subsequently filed notices of appeal.

## II.

We address in turn the District's and Hudson's appeals.

### *A. The District*

As a preliminary matter, Clayton challenges the court's jurisdiction on the ground that the District failed to file a timely and effective notice of appeal pursuant to Federal Rules of Appellate Procedure 3 and 4. We conclude that we have jurisdiction over the District's appeal.

Under Rule 4(a)(1)(A), the District was required to file a notice of appeal in the district court "within 30 days after the judgment or order appealed from"—that is, no later than May 2, 2007, 30 days after the April 2, 2007 order disposing of the District's post-trial motions. Fed. R. App. P. 4(a)(1)(A). Clayton does not dispute that the District filed a timely notice of appeal on May 2, 2007 but argues it was ineffective because it did not comply with the directive in Rule 3(c) that the "notice of appeal must . . . designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). Clayton argues the notice was defective because it designated for appeal "the judgment of this Court (Collyer, J.) entered on the 2nd day of April, 2007 against defendants *and in favor of Grace Hudson,*" Notice of Appeal, *Hudson v. District of Columbia*, C.A. No. 02-2217 (D.D.C. filed May 2, 2007), whereas their appeal was in fact from the judgment against the defendants and *in favor of Karim Clayton*. Clayton's argument is hyper technical and

ignores the rationale underlying Rule 3(c)'s requirements: to ensure that an appellant provides "fair notice to the opposing party and to the court," *Anderson v. District of Columbia*, 72 F.3d 166, 168 (D.C. Cir. 1995). The District's notice of appeal provided adequate notice to both Clayton and this court that "the judgment, order, or part thereof being appealed," Fed. R. App. P. 3(c)(1)(B), was, as identified in the notice, "the judgment . . . entered on the 2nd day of April, 2007 against defendants." Although the additional phrase "and in favor of Grace Hudson" was not technically accurate, this defect "did not mislead or prejudice" Clayton, *Foman v. Davis*, 371 U.S. 178, 181 (1962), because the notice "unambiguously inform[ed] the opposing counsel and the district court" of the particular order being appealed, *Anderson*, 72 F.3d at 168. Moreover, it was obvious to both Clayton and the court that the District intended to appeal the designated order filed April 2, 2007 insofar as the order favored Clayton (rather than Hudson) as this was the only respect in which the order was adverse to, and therefore appealable by, the District. Thus, the notice of appeal was effective and we have jurisdiction to consider the merits of the District's appeal. *Cf. Foman*, 371 U.S. at 181-82 (finding notice of appeal from denial of post-dismissal motion to vacate provided "effective, although inept" notice of intent to appeal dismissal itself); *Anderson*, 72 F.3d at 168 ("because it was obvious in which court his appeal properly lay, [appellant] gave fair notice to the opposing party and the court" notwithstanding notice of appeal "improperly designated the United States Supreme Court as the court to which the appeal was taken"); *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316-17 (1988) (although requirements of Rules 3 and 4 are jurisdictional, "if a litigant files papers in a fashion that is technically at variance with the letter of a procedural rule, a court may nonetheless find that the

litigant has complied with the rule if the litigant's action is the functional equivalent of what the rule requires").[1]

The District contends that the district court abused its discretion when it denied the District's motion for a new trial on all of the claims notwithstanding Clayton's counsel's improper "prior bad acts" cross-examination and closing argument. *Hudson*, 517 F. Supp. 2d at 51-55; *see Muldrow ex rel. Estate of Muldrow v. Re-Direct, Inc.*, 493 F.3d 160, 166 (D.C. Cir. 2007) ("We review the district court's denial of [the] motion for a new trial 'only for an abuse of discretion.' " (quoting *Daskalea v. District of Columbia*, 227 F.3d 433, 443 (D.C. Cir. 2000))). We agree with the District that the trial court committed reversible error and therefore remand for a new trial.

During Clayton's counsel's cross-examination of Merritt, the following colloquy occurred:

Q: Before we go on any further, would it be fair to say that you have issues with anger?

A: No.

Q. Would it be fair to say that you have issues with your veracity?

A. No, no more than anyone else.

> [Defense Counsel]: I object unless there's some good faith belief that he can give a positive answer to these questions.

> [Clayton's Counsel]: We're getting there.

---

[1]In light of our disposition, we need not consider the District's contention that an amended notice of appeal, identified in the docket as filed on May 3, 2007, was in fact filed after business hours on May 2, 2007.

> The Court: Well let us proceed. If there's no support for the questions, then we can direct the jury.

Q. Now haven't you in fact been disciplined for those things? He can't help you now.

> [Defense Counsel]: Yes, I can because I object. I don't know what he is talking about. I think we should take a proffer at the bench, and then if he has some evidence because it's very prejudicial to imply stuff that he can't prove.

Transcript of Trial, *Hudson v. District of Columbia*, C.A. No. 02-2217, 103 (D.D.C. Aug. 25, 2005) (8/25/05 Trial Tr.). During the ensuing bench conference, Clayton's counsel assured the court he had "[e]vidence of [Merritt's] two trial boards and what [Merritt] was charged with"[2] but stated he would show the evidence to defense counsel and the court only if Merritt denied being disciplined—if Merritt did so, Clayton's counsel was "going to impeach [Merritt] with his own deposition," in which Merritt "admitted . . . that he has trial boards." *Id*. at 104-05. Clayton's counsel asserted to the court that one "trial board" was "[f]or being involved in an altercation with a female outside of [a] club," prompting defense counsel to respond: "Is this evidence of prior misconduct to show on this particular date that he is inconsistent [sic]? That's not allowed by the rules." *Id*. at 105. An extended discussion among court and counsel followed and the court sent the jury to the jury room until the dispute could be resolved. In response to the court's repeated requests

---

[2]Under D.C. law, the mayor appoints "trial boards" to try members of the MPD, D.C. Code § 5-133.06, and the chief of police "refer[s] to a trial board for adjudication charges brought against any member of the department," D.C. Mun. Regs. tit. 6A, § 800.11.

that he reveal what evidence he had, Clayton's counsel instead complained that at deposition Merritt refused to answer questions about the trial board or his "administrative leave for disciplinary purposes." *Id*. at 110. In the end, Clayton's counsel "represent[ed]" to the court that Merritt's trial board "found him guilty of the specification that he was charged with" and the court responded that "with that kind of a representation, . . . I have to allow him to continue to ask his questions." *Id*. at 113. The court brought the jury back into the courtroom and Clayton's counsel then resumed his cross-examination:

> Q. Officer Merritt, I was asking you isn't it true that you were brought up on charges based upon actions you took relative to a female at a club?
>
> A. Yes.
>
> Q. And didn't that involve accusations of you having taken physical actions against her?
>
> A. They were accusations.
>
> Q. And you had a trial board about that, didn't you?
>
> A. Yes.
>
> Q. And at that trial Board those accusations were sustained were they not?
>
> > [Defense Counsel]: Objection, your Honor.
> >
> > The Court: This is cross-examination. This is legitimate cross-examination.[3]

---

[3]It was at this point the trial judge erroneously opened the door for Clayton's counsel to ask wide-ranging questions about Merritt's prior bad acts—an invitation Clayton's counsel exploited. Even if the earlier questions were arguably proper as impeachment, the inquiry into the trial boards' substance—to which defense counsel plainly objected—was unrelated to anything but Merritt's prior misconduct,

[To Clayton's Counsel]: Continue . . . .

By [Clayton's Counsel]:

Q. Were they not?

A. No, not all.

Q. Some of them were?

A. Just, just the acts unbecoming.

Q. Acts unbecoming of a police officer?

A. Right.

Q. How many?

A. One.

Q. Just one?

A. One.  It covered the whole, covered the whole thing. That one statement, that one acts unbecoming covers the whole thing.

Q.  Just one, nothing about false reports?

A.  No, not that I can remember.

Q. And nothing about your use, your improper use of force?

A.  Not that I can remember that, no.

*Id*. at 113-14.

During closing, Clayton's counsel first purported to remind the jurors that Merritt testified he had been suspended for

---

namely "improper use of force" and filing "false reports."  Allowing such questioning lay the groundwork for Clayton's counsel to exploit the alleged prior misconduct in his closing as proof of conforming misconduct in this case.

"[m]aking a false statement" (which the court characterized as "close to what the evidence was") and "using . . . inappropriate force on a woman outside of a night club." 8/31/2005 Trial Tr. at 88. The court overruled defense counsel's objection to the statements and refused his request to strike them. Clayton's counsel then continued (again over defense counsel's objection):

> That's Merritt. He was only suspended for a year, a year. As he says for conduct unbecoming an officer. You're kidding. Lying on a report and using inappropriate force on a woman outside of a nightclub, you're right that its conduct unbecoming.
>
> * * *
>
> [B]efore coming back and getting on that beat, he had been suspended for a year for misconduct.
>
> Let me tell you something. You're not a bad cop on Monday and a good cop on Tuesday. It don't work like that. If you were a bad cop on Monday, you're a bad cop on Tuesday. You're a bad cop on Wednesday, you're a bad cop on Thursday, and you're a bad cop on Friday. You may not get caught on Tuesday, Wednesday, Thursday, and Friday, but you are a bad cop nevertheless.
>
> And you know from Officer Merritt himself that he was a bad cop. And Officer Merritt can't change and become a good cop overnight. Good cops don't get, good cops don't get suspended from work.

*Id*. at 88, 93-94. At this point defense counsel interjected: "Objection, Your Honor. This is arguing from past misconduct that there is a future inclination for that which is our objection to the original evidence and it's a continuation." *Id*. at 94. The court responded: "I think you made that point. Why don't you

just move on." *Id.* Clayton's counsel then continued his closing argument.

After instructing the jury, the court asked counsel: "Is there any other instructions that counsel wishes me to give the jury before we release them to begin their deliberations?" 9/1/2005 Trial Tr. at 39. During the colloquy that followed, defense counsel informed the court: "I just wanted to make a record because we still have problems with [Clayton's counsel]'s argument yesterday that the cop is a bad cop on day one, day two." *Id.* at 41. The judge replied: "[Y]ou can expand on that after the jury goes." *Id.* The jury then retired to begin deliberating. At that point, as directed by the judge, defense counsel renewed his objection that Clayton's counsel "made an argument that [defense counsel did]n't think is allowed under the rules of evidence as propensity, that he's claiming that the officer had a propensity to be violent and to lie." *Id.* at 44. In addition, he requested a curative instruction, which the court denied because it had "sustained" the defendants' objection to the "bad cop" argument and because she "d[id]n't recall [a] request for a curative instruction prior to the time that the jury retired to deliberate" and she did not believe she could give such an instruction at that time "without giving it unduly." *Id.* at 45.

It was a violation of Rule 404(b) for the trial judge to permit Clayton's counsel to elicit testimony about Merritt's purported history of anger, using "improper use of force" and filing "false reports." 8/25/05 Trial Tr. at 103, 114. Such testimony is evidence of prior bad acts introduced "to show action in conformity therewith" and is therefore prohibited under Fed. R. Evid. 404(b). *Cf. United States v. Simpson*, 992 F.2d 1224, 1228-29 (D.C. Cir. 1993) (permitting prosecutor to cross-examine defendant about prior narcotics possession was reversible error under Rule 404(b)). The court compounded its error when it permitted Clayton's counsel to exploit the 404(b) questioning during closing to indict Merritt as a "bad cop" every

day of the week and declined to provide a curative instruction either sua sponte, in response to the District's repeated objections, or after the District expressly requested such an instruction immediately after the jury retired to deliberate. *See United States v. Rhodes,* 886 F.2d 375, 382 (D.C. Cir. 1989) (noting prejudicial effect of prosecutor's reference in closing argument to impermissible 404(b) evidence). The cumulative effect of the inadmissible evidence and the inflammatory argument based on it is precisely what Rule 404(b) prohibits: exhorting a jury to find against a defendant because he acted "in conformity" with his bad acts—here, a purported history of physical violence, "improper use of force" and filing "false reports." 8/25/2005 Trial Tr. at 113-14. And to all appearances, the jury may well have been persuaded by the testimony. The error cannot be deemed harmless as the trial was hotly contested and turned largely on credibility.

Clayton and the trial court have asserted that the District waived the Rule 404(b) objection by not making it at trial. *See* Appellees' Br. at 36; *Hudson*, 517 F. Supp. 2d at 52. But defense counsel in fact made a timely objection during the trial. As noted above, during the bench conference regarding the "trial boards," defense counsel addressed the court as follows: "Is this evidence of prior misconduct to show on this particular date that he is inconsistent [sic]? That's not allowed by the rules." 8/25/2005 Trial Tr. at 105. While the phrasing may have been somewhat inartful (and perhaps mistranscribed), it was stated with "enough specificity to alert the district court and opposing counsel to the basis for the objection," namely that the examination violated Rule 404(b). *United States v. David*, 96 F.3d 1477, 1480 (D.C. Cir. 1996). Further, the District did not waive the right to a curative instruction by waiting until after the jury retired to request one. The trial court itself directed defense counsel to wait until "after the jury goes" to "expand on" the objection made after the instructions, *see* 9/1/2005 Trial Tr. at 41, and defense counsel merely obeyed the court's directive.

13

### B. Hudson

Next, we address Hudson's appeal from the district court's judgment as a matter of law on her claim for intentional infliction of emotional distress and the vacatur of her damages award.[4] The court reviews *de novo* the trial court's denial of a motion for judgment as a matter of law and may reverse "only if the evidence and all reasonable inferences that can be drawn therefrom are so one-sided that reasonable men and women could not have reached a verdict in plaintiff's favor." *Muldrow*, 493 F.3d at 165 (internal quotation omitted). We conclude that the district court correctly granted judgment on Hudson's claim.

At trial, Hudson sought to recover for the emotional distress she allegedly suffered as a result of watching her grandson Clayton's being beaten by Merritt. She testified that, while watching the altercation, she felt "afraid for him," "apprehensive" and "worried" and that for two days afterward (before she saw him again) she was "apprehensive," "wondering how he was doing" and "just worried about him and also [her]self" but she felt "better" after seeing him in the hospital. 8/24/2005 Trial Tr. at 18, 20-21, 29. She also said she was "despondent" and "just ready to cry" when she looked at the blood in her living room carpet. *Id*. at 26. Finally, she testified she did not want Clayton at her home as much as before the incident because she felt "tense" that there were "so many police around [her] house or coming up [her] street" and she would

---

[4]There is no question that Hudson's notice of appeal—filed on May 15, 2007, within the 14-day window following the timely filing of the District's notice on May 2, 2007—was timely. *See* Fed. R. App. P. 4(a)(3) ("If one party timely files a notice of appeal, any other party may file a notice of appeal within 14 days after the date when the first notice was filed, or within the time otherwise prescribed by this Rule 4(a), whichever period ends later.").

"rather for him to stay with his mother and not come see [Hudson] like he used to." *Id*. at 30.

In the April 2, 2007 memorandum opinion and order, the court granted judgment as a matter of law on Hudson's claim, concluding that her "feelings, though arising from lamentable circumstances [we]re not of sufficient duration or severity to be considered serious under District of Columbia law." 517 F. Supp. 2d at 48. We agree with the district court's determination because the trial record reveals only general, subjective feelings of worry and concern and not the kind of serious, verifiable emotional injury that D.C. law requires to support a claim of emotional distress. *See Williams v. Baker*, 572 A.2d 1062, 1068 (D.C. 1990) (en banc) ("[I]n furtherance of the policy of excluding recovery for trifling distress, the claimed distress must be 'serious' and 'verifiable.' ").

For the foregoing reasons, we affirm the district court's judgment as a matter of law on Hudson's emotional distress claim, vacate the verdicts in Clayton's favor on the excessive force, assault and battery, false arrest and malicious prosecution claims and remand for a new trial on the four latter claims.

*So ordered*.